UNITED STATES, Appellee

v.

WILLIAM BOWERS, JR., Corporal, U. S. Army, Appellant

3 USCMA 615, 14 CMR 33

LT COL James C. Hamilton, U. S. Army, and CAPT William C. Irby, Jr., U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Martin Blackman, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial in Korea upon two charges which involved violations of Articles 118 and 128, Uniform Code of Military Justice, 50 USC §§ 712 and 722. The first specification alleged the unpremeditated murder of Lee Bok Hee and the second specification charged an assault with a dangerous weapon, in which grievous bodily harm was intentionally inflicted. He was found guilty as charged and sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for fifteen years. The convening authority approved and the board of review in the office of The Judge Advocate General affirmed. Accused's petition for review was granted by this Court, and it raises the issue of whether the law officer committed prejudicial error in failing to instruct on the elements of the lesser included offenses.

Although the times stated may be somewhat inaccurate because of difficulties encountered in interpreting the testimony of Korean witnesses, the record shows that at about 9:35 p.m. on June 14, 1952, Lee Bok Hee, a Korean woman, was shot in the abdomen and subsequently died from the wound. A short time prior to being shot she had left her home for the purpose of purchasing some bread. There were no eyewitnesses to the shooting but Lee Yun Gil heard shots, followed by a woman's scream, and then he noticed a colored American soldier running toward him. As the soldier passed, another shot was fired and Lee was struck in the head by a bullet which exited below his left eye. Lee identified the accused as the soldier who had passed him. A short time thereafter at a place three to four hundred meters from the area of the previous shootings, Lee In Jung saw a tall colored American soldier running down a hill toward him carrying a carbine. In passing, the soldier struck Lee with the weapon and knocked him unconscious. This witness subsequently identified the accused as his assailant. Near the same time, the accused was seen at Gate number 5 of a unit compound at which time he was carrying a carbine and he appeared to the guards to have been drinking. He had in his pocket a 30-round carbine magazine containing 25 cartridges. The following day, while investigating the shooting, an agent of the CID obtained a .30 caliber carbine slug from a Korean who owned a shop in the immediate vicinity of the shooting. This shop had been visited the previous night by a Korean woman who had purchased some bread. Immediately after she left, the shopkeeper had heard a shot. The next day he found a bullet-size hole in the door of the shop and another in the wall between the shop and the next room. A few days later, a bullet was found which was turned over to the investigators, and by expert testimony it was shown to have been fired from a .30 caliber United States carbine rifle, serial number 7479073. On the date of the shooting that carbine was issued to Private Manuel Eddens who placed it under his mattress and according to his testimony he did not see it again until the following day. At approximately 10 o'clock in the evening, June 14, 1952, the accused was seen placing a carbine on Eddens' bunk. When Eddens inspected the carbine the

616

following day it appeared to have been fired. On the same night, while at the swimming pool in the unit compound, the accused told Eddens that he had shot a Korean man and woman just prior to his arrival in the area. Eddens claims he paid little attention to the statement as he concluded the accused was drunk.

The accused did not take the stand as a witness, except after findings, and then for mitigating and extenuating purposes. However, the defense introduced the testimony of other soldiers, principally Corporal Oda and Corporal Holliman, with the end in view of establishing an alibi. They testified that the accused was with them either in the noncommissioned officer's club or in the unit area between the hours of 8:30 and 10:00 p.m. on the evening in question, and that the accused did not have a carbine in his possession at any time. They further testified that they had accompanied him to the swimming pool at about 10 o'clock and had left him there. There was also testimony from these witnesses and from others to the effect that during the time they were together in the club, the accused had been drinking and was intoxicated. This evidence, together with testimony of other witnesses which fixed accused's location in the area, put identity of the criminal in sharp dispute. In addition, defense introduced personnel who had witnessed the lineup procedure at which the Korean witnesses had identified the accused as the person who committed the offenses. By the use of their testimony defense counsel sought to cast further doubt on the prosecution's evidence as to identity.

At the appropriate time, the law officer instructed the court-martial upon the elements of the offenses with which the accused was charged, the presumption of innocence, the burden of proof, reasonable doubt, circumstantial evidence, and upon the issue of alibi. He omitted, however, to give any instructions involving the effect of intoxication upon the gradations of the crimes involving specific intent, and he neglected to define the lesser included offenses reasonably raised by the evidence. It is to review the aforementioned instructional deficiencies that the petition for review was granted.

Defense counsel argue vigorously that the evidence of intoxication reasonably raised issues of lesser included offenses, and that the law officer was, therefore, required to submit instructions thereon. We can summarily dispose of this contention as it applies to the murder specification. In United States v. Craig, 2 USCMA 650, 10 CMR 148, we held that specific intent is not an element of unpremeditated murder and that that offense cannot be reduced to a lesser degree of homicide by a showing of voluntary intoxication not amounting to insanity. The only issue with which we are concerned, therefore, is whether the evidence of intoxication required an instruction on the lesser included offenses of assault with a dangerous weapon with grievous bodily harm intentionally inflicted.

In United States v. Backley, 2 USCMA 496, 9 CMR 126, the accused was convicted of an assault similar to the one here in issue. There, as in the present instance, the record contained evidence of the intoxication of the accused. We held that the offense required a specific intent to inflict grievous bodily harm, and stated:

"Only recently have we had occasion to repeat and summarize what we said in earlier opinions with respect to the necessity of instruction on the effect of intoxication as bearing on specific intent. United States v. Larry J. Miller, (No. 1021), 7 CMR 70, decided February 13, 1953. The long and short of the matter is that, where the drunkenness of the accused at the time of the offense is fairly raised by evidence in such a posture as to suggest a reasonable possibility that the intoxication was of a kind and extent likely to affect the ability of accused to entertain a specific intent, the law officer is required to instruct (1) on the legal effect of intoxication in relation to specific intent, and (2) as to the elements of lesser offenses not involving such an intent, if any. Of course, where

**617**

the principal offense charged does not require a specific intent, the condition of the accused as regards sobriety is irrelevant."

In other instances we have stated that the evidence must show the intoxication to be of such a degree as to negate the presence of a mental capacity to form a specific intent. However, because of our disposition of the case on other grounds, we conclude it is unnecessary to develop further the facts and test them by that principle. We shall, for the purpose of this case, assume the record contains evidence of a state of intoxication sufficient to raise an issue and require instructions by the law officer.

The real problem brought into focus is whether the accused can, for the first time on appeal, raise successfully the error he seeks to impress on us. For reasons which follow, we have concluded he cannot. At the commencement of the trial, counsel for the Government admonished the members of the court-martial that time would be an important factor in the case because he anticipated that the accused would defend on a theory of alibi. This anticipation must have been based on fairly accurate information as the statement was unchallenged and it was verified by the trial tactics of defense counsel. The cross-examination of prosecution's witnesses was directed toward two matters of importance to the defense, namely: (1) the precise time events occurred, and (2) identity of the accused. In addition, his cross-examining of one, Eddens, brought out evidence of intoxication but the purpose was to show the accused was in such physical condition that he could not have covered the distance between the scene of the crimes and the point where the conversation was held in the time interval disclosed by other evidence. As the drama was unfolded, the main points in dispute were narrowed to the location of the accused at the time the crimes were committed. The Government's evidence was directed toward placing him at the scene of the crimes and his evidence was weighted overwhelmingly toward establishing his presence in a unit area. When his witnesses testified as to his activities during the period in question, they referred to his drinking of intoxicating beverages. However, their testimony on this point was incidental to the primary theme of the defense. It was desirable from accused's standpoint to have them relate in detail what transpired during the critical period as a means of fortifying and bolstering their testimony of being in his presence. Assuredly, if the court-martial members were convinced he was fraternizing with the witnesses in the company area at the time the offenses were committed, they could not find he committed the crimes.

The same theory of defense was threaded through the subsequent proceedings and it was the principal subject covered by defending counsel during his argument. He very ably summed up the evidence to support his contention that accused's identity, his opportunity to commit the offenses, and his possession of a carbine were not established beyond a reasonable doubt. Any argument on an assault, without specific intent to inflict bodily injuries, would have been a confession of weakness and it would have been hostile to the defense of not being present at a scene of the crime. We do not wish to be understood as saying that an accused cannot seek and argue the benefit of any defense, consistent or inconsistent, but he is entitled to select his line of defense and not have issues suggested by the law officer which cast doubt on his theory of defense but are unnecessary to support the Government's case. Here the law officer was being guided on his instruction by the issues developed by defending counsel. When he gave his instructions to the court-martial, he specifically included one on the defense of alibi. Later, defense counsel requested that he explain to the members the inferences which they could reasonably draw from circumstantial evidence. This request was complied with and then to make certain his coverage of the issues was completely satisfactory to the defense, the law officer inquired of counsel as to whether he desired any additional in-

618

structions. A response in the negative was received.

There are certain cases wherein an accused elects to make an unqualified selection as to the issues to be submitted and is bound thereby. Particularly is this true when the raising of one doubtful defense will weaken substantially one which has considerable merit. We are of the opinion that this case belongs in that class. The tactics adopted by the defense counsel, and constantly adhered to during the trial of this case, make it clear that any defensive measures based on the grounds of intoxication were deliberately abandoned. The most that accused could have hoped for had that stand been chosen would have been conviction of a crime of lesser importance on one specification and guilty of the other. An alibi, if successful, offered a finding of *not guilty on both*. The gamble was well worth taking and so a request by the accused for the reductive instruction would have been ill-chosen. A similar situation confronted the law officer. Had he instructed upon the issue *sua sponte*, he might have suggested his disbelief of the story told by the witnesses for the accused. In addition, he would have interjected an issue which might have resulted *in a possible compromise finding not wanted* by the accused. That defense counsel preferred not to have the defense of alibi weakened by admitting the possible presence of the accused at the scene in a condition so drunk he knew not what he was doing, seems apparent from his failure to develop that theory by direct evidence; his failure to unfold it on cross-examination; the failure to mention it in final arguments; and, lastly, the failure to request any instruction on that issue when an opportunity to do so was offered by the law officer.

We have previously mentioned and, in a limited number of cases, applied the doctrine of waiver where there has been a well-informed choice to defend on one theory. In United States v. Masusock, 1 USCMA 32, 1 CMR 32, we adopted the following language found in Smith v. United States, 173 F2d 181, 184 (CA 9th Cir), (1949), as follows:

"It is without question true that in a criminal case the ultimate issue is the guilt or innocence of the accused, to be determined by a fair trial and not the competency of counsel, but it cannot serve the purpose of justice to permit a defendant to prosecute one theory in the trial court and, finding it unsuccessful, not only to substitute another on appeal but to claim error arising out of that which he himself has invited. The admitted normal rule is that an appellate court will not consider matters which are alleged as error for the first time on appeal, and this is true of criminal as well as civil cases. However, an exception exists in criminal cases where the alleged error would result in a manifest miscarriage of justice, or would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" [Citing United States v. Atkinson (1936) 297 U. S. 157, 160, 80 L ed 555, 56 S Ct 391.]

In United States v. Mundy, 2 USCMA 500, 9 CMR 130, we were dealing with tactics of defending counsel in electing to pursue one defense. In that case we said:

"Obviously the conduct of the defense counsel in this instance was not a mere failure to object, or to request appropriate instructions. His actions were affirmative, deliberate and evidential of a conscious design. The only reasonable inference to be drawn from these tactics is that he did not desire the lesser included offense submitted for the court's consideration, on the theory that, by eliminating a showing of willfulness, he hoped to obtain a complete acquittal. Necessarily a certain risk attends all tactics at trial level. When carefully considered tactics fail, the defense cannot be permitted to seek, upon appeal, further opportunity to indulge its tactical guesses at a new trial."

We deal here with a record which shows a case well tried. No question of oversight or inadvertence breaks through defending counsel's trial tactics. A successful appellate system cannot be built if we are to permit an ac-

cused to elect one course at the trial level and then, if that turns out disastrously, grant him a reversal so that he may have a chance to retry the case on a theory he previously rejected. Particularly does that principle apply when, by defense tactics, the law officer is faced with a dilemma in presenting to the court inconsistent theories. The law officer should not be placed in a situation where an accused can claim prejudicial error regardless of which course the law officer pursues, and this case seems to pose that problem. On the one hand, if he instructs on a theory which is unwanted and a verdict of a lesser included offense is returned, cannot the accused justly complain that the law officer injected an issue not raised by him? Is the accused not, if he so desires, entitled to limit the findings of the court to only guilty or not guilty of the principal offense? On the other hand, if the law officer does not so instruct, is accused entitled to a reversal because lesser included offenses were reasonably raised by the evidence? We believe accused is the one who must prevent that dilemma. If he does not want an inconsistent theory injected into the deliberations of the court-martial, he may make that election by stating that he does not want any instructions other than those given, as did counsel in this case. If, however, he desires to take a chance on a verdict of a lesser offense, he should specifically request appropriate instructions so that he cannot complain if they are given.

The law officer in this case followed the only logical course charted by the accused. While other courses were open to the accused at the trial stage of the proceedings, he has waived his right to now contend that the law officer should have compelled him to follow them. We, therefore, conclude that, in this instance, an election was made which was deliberate, intentional, and with full knowledge that accused was limiting the choice of findings to either guilty or not guilty. When that is the situation, a rehearing will not be granted to give an accused a second choice.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.