UNITED STATES, Appellee

v.

LAFAYETTE P. D. HOLLEY, Airman Second Class, U. S. Air Force, Appellant

5 USCMA 661, 18 CMR 285

No. 5899

Decided April 15, 1955

Col A. W. Tolen, USAF, and 1st Lt Robert Burns, USAF, for Appellant.
Lt Col Emanuel Lewis, USAF, and Maj Roger H. Miller, USAF, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

Tried by an Air Force special court-martial convened at Norfolk, England, the accused was convicted of an assault whereby grievous bodily harm was intentionally inflicted—in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722. The adjudged sentence to bad-conduct discharge, partial forfeitures, and confinement at hard labor for six months, and the findings, were subsequently approved with minor modifications by intermediate appellate authorities. We granted review to determine whether the law officer erred in failing to instruct on the lesser offense of assault with a dangerous weapon.

II

On the afternoon of the day in question, the accused and an airman named Harrison became involved in a heated argument during a squadron social gathering. Since the accused and all other members of the squadron had taken unrestrained advantage of the constant flow of beer during the day,

efforts to restore Holley and Harrison to amicable terms were unsuccessful. Eventually, Harrison, in gutter language, made specific and uncomplimentary reference to the accused's race—and a physical encounter ensued. Pushed backward against a nearby table, the accused—he said—observed his hand to rest upon an instrument which he "thought" to be a beer can opener. Seizing the device, he continued the struggle with Harrison, forcing the latter down upon his own bed. Thereupon the accused wrenched his hand free and raked his victim across the cheek. Thirteen stitches were required to close the wound, and at the trial Harrison exhibited a substantial scar on the left side of his face.

Taking the stand in his own behalf, the accused admitted the facts reported above—save that he insisted that the slash across the victim's cheek was unintentional. He had merely wished to "punch" Harrison, he stated, and did not at all intend to cut him. Basing his closing argument primarily on this latter testimony, individual defense counsel urged the court-martial either to acquit, or to find the accused guilty of mere simple assault. The president of the court-martial thereafter instructed on the offense charged, together with the lesser offense of assault consummated by a battery. He also charged on the effect of intoxication on specific intent, but omitted all reference to the elements of the crime of assault with a dangerous weapon. We are now called on to decide whether his failure to instruct on that lesser offense was materially prejudicial to a substantial right of the accused.

### III

We observe at the outset that neither the accused, nor any other witness who appeared at the trial, was positive in identifying the "instrument" used by Holley to slash his victim's face. Although the accused "thought" he had held a beer can opener, the weapon was not produced at the trial. Assuming, however, that such a mechanism—or some similar sharp metallic object—was in fact the cutting agency, we are required to decide whether it was used in a manner likely to produce grievous bodily harm. It should be obvious, of course, that an implement of this character is not normally regarded as deadly.

In his pretrial statement, the accused admitted scraping the victim across the cheek with a metal device of some sort, and made no suggestion that his actions were other than intentional. At the trial, however, he attempted to exculpate himself by testifying that, when he lunged at Harrison, he meant to strike, but did not intend to cut him. Since a blow effected by a fist, or by a hand containing a small metal object, is *unlikely* as a usual thing to produce grievous bodily harm, the accused in effect has denied using the beer opener in such a manner as to accomplish this result.

We are thus presented with a novel problem. Because the testimony of every other witness was concededly so vague or uninformed as to be valueless, evidence of assault with a dangerous weapon—if that issue is to be raised at all—must emanate either from the accused's extrajudicial confession, or from his testimony at the trial. United States v. Johnson, 3 USCMA 209, 11 CMR 209; United States v. Apple, 2 USCMA 592, 10 CMR 90. The pretrial statement, however, admits that the instrument was used to abrade the victim's jaw in such a manner that grievous harm did, in fact, result. Moreover—although claiming to have been intoxicated—the accused, in his confession, (1) described the provoking language which led to the assault, (2) remembered vividly the details of the encounter, and (3) recalled with extraordinary clarity each event which occurred after Harrison's injury. It would be most difficult to say, then, that his extrajudicial statement presented anything less than a concession of guilt of the infliction of grievous bodily harm intentionally.

In his *testimony*, on the other hand, the accused admitted nothing other than the commission of a battery. He denied using the opener as a weapon at all. After careful scrutiny of both

**663**

the confession and the recorded testimony, we are unable to find evidence from which it may be inferred that the offense of assault with a dangerous weapon became at all an issue in the case, and resultantly that it should have been submitted to the triers of fact. Nothing in this record of trial indicates that the metal object in question was used, without a specific purpose, in a manner likely to produce grievous bodily harm.

### IV

The conclusion we have reached above may be supported on a further ground. The accused's individual defense counsel, a British solicitor, appears consciously and advisedly to have adopted a theory of defense designed to result either in acquittal, or in a conviction of the lesser crime of assault consummated by a battery. His election to ignore the possibility of an assault with a dangerous weapon is made clear by (1) his omission to develop this theory either through his own evidence or on cross-examination, (2) by his failure to advert to it in closing argument while expressly mentioning simple assault, and (3) by his election not to request that the court-martial be instructed on that issue.

The fact that these tactics failed at the *nisi prius* level constitutes no sound reason for granting the defense on appeal an opportunity to pursue an entirely different theory. United States v. Bowers, 3 USCMA 615, 14 CMR 33; United States v. Duggan, 4 USCMA 396, 15 CMR 396. Moreover, the instructions given by the president of the court-martial were completely in keeping with the implied request contained in defense counsel's closing argument. Indeed, if the president had instructed on assault with a dangerous weapon—in the face of a defense theory predicated on the notion that the accused was guilty either of an assault consummated by battery or of nothing at all—it might well have been argued that such an instruction had operated to the prejudice of the accused. See United States v. Bowers, supra. Accordingly, we must hold that the president of the special court-martial did not err in failing to instruct on the lesser offense of assault with a dangerous weapon.

### V

It follows from what has been said that the decision of the board of review must be, and is, affirmed.

Chief Judge QUINN and Judge LATIMER concur.