UNITED STATES, Appellee

v

RICHARD F. WILSON, Private First Class,
U. S. Army, Appellant

7 USCMA 713, 23 CMR 177

No. 9028

Decided April 12, 1957

Major Frank C. Stetson and First Lieutenant Norman W. Polovoy argued the cause for Appellant, Accused.

Captain Thomas J. Nichols argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel Thomas J. Newton.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial for felony-murder and robbery, in violation of Articles 118(4) and 122, Uniform Code of Military Justice, 10 USC §§ 918 and 922, respectively. He was found guilty of the lesser included offenses of voluntary manslaughter and larceny, in violation of Articles 119 and 121, Uniform Code of Military Justice, 10 USC §§ 919 and 921, and sentenced to dishonorable discharge, total forfeitures, and confinement for eight years. The convening authority reduced the confinement to five years but otherwise approved both the findings and sentence, and the board of review affirmed. We granted review to determine the adequacy of the law officer's instructions concerning the homicide, for the conviction of larceny is unassailable.

We are sure that the facts need not be recited in detail, but some conclusions must be set forth to render this opinion intelligible. There can be no doubt but what the victim died as an immediate result of a physical encounter with the accused. Similarly, there is no question but what the accused took the victim's wallet after rendering him insensible. Thus, under one view of the evidence, at least a prima facie case of felony-murder and robbery was made out. However, there was other evidence, presented by the accused and corroborated in part by the Government, to support the following theories: That the accused killed without premeditation and without an intent to steal; that he killed in the heat of a passion caused by what would undoubtedly be adequate provocation; or, lastly, that after fighting with the deceased and being rendered unconscious, he regained consciousness and killed in self-defense to prevent the completion of an unnatural felony upon his person. The accused admitted, with respect to the latter three hypotheses, the formation and consummation of an intent to steal occurring as a separate transaction after the fatal encounter.

An out-of-court conference was held to discuss the law officer's proposed instructions after all of the evidence had been presented and the arguments made. That functionary indicated to counsel

714

that instructions on unpremeditated murder and voluntary manslaughter, which he concluded were raised as reasonable alternatives to the principal offense of felony-murder, would be given, and to this the defense counsel objected. In presenting his objection, counsel asked that the possibility of a compromise verdict be avoided, and that the court-martial be instructed to consider only two findings, namely, guilty of felony-murder or not guilty by reason of self-defense. The law officer declined to yield to defense counsel's request, and instead instructed fully on all the issues of the case as he saw them. It is this decision by the law officer which is presently before us.

## II

As long ago as United States v Clark, 1 USCMA 201, 2 CMR 107, we held that it is the law officer who bears the primary burden of insuring that the fact finders are instructed as to the elements of those lesser included offenses which are reasonably raised by the evidence. Along similar lines, we have held that a mere failure of defense counsel to request such instructions, or object to their absence, will not serve as a waiver of his rights in this regard. United States v Williams, 1 USCMA 186, 2 CMR 92.

In another course of decision, however, we have recognized that defense counsel must be given the opportunity to frame a theory or hypothesis of defense, and that he may, if he so chooses and the law officer acquiesces, elect to take his chances on an "all or nothing" verdict—quite without regard to whether or not certain lesser included offenses might be raised by the evidence. United States v Mundy, 2 USCMA 500, 9 CMR 130; United States v Bowers, 3 USCMA 615, 14 CMR 33; United States v Jackson, 5 USCMA 584, 18 CMR 208; United States v Snyder, 6 USCMA 692, 21 CMR 14.

In all of the cases cited in the preceding paragraph, the law officer was guided by the express desires, or at least deluding conduct, of defense counsel, and did not give instructions on the lesser included offense or offenses. Perhaps in several it could fairly be said that there was considerable doubt as to whether the lesser offense was really raised. Nevertheless, in all of those cases our holding was based, though sometimes only in part, on the principle that a defense counsel who pursues a deliberate course of conduct at trial, and thereby invites the law officer to instruct on his theory of defense and thereafter restrict the issues, has no ground for complaint upon appeal if it turns out that he has miscalculated the temper of the court-martial. Thus, in United States v Mundy, supra, we said:

"Obviously the conduct of the defense counsel in this instance was not a mere failure to object, or to request appropriate instructions. His actions were affirmative, deliberate and evidential of a conscious design. The only reasonable inference to be drawn from these tactics is that he did not desire the lesser included offense submitted for the court's consideration, on the theory that, by eliminating a showing of willfulness, he hoped to obtain a complete acquittal. Necessarily a certain risk attends all tactics at trial level. When carefully considered tactics fail, the defense cannot be permitted to seek, upon appeal, further opportunity to indulge its tactical guesses at a new trial."

The following excerpt from Bowers, supra, is also appropriate:

"We deal here with a record which shows a case well tried. No question of oversight or inadvertence breaks through defending counsel's trial tactics. A successful appellate system cannot be built if we are to permit an accused to elect one course at the trial level and then, if that turns out disastrously, grant him a reversal so that he may have a chance to retry the case on a theory he previously rejected."

Similar expressions of our thinking in this sort of situation may also be found

in United States v Jackson, supra, and United States v Snyder, supra.

The question as to whether a lesser included offense has been raised in any given case may be a difficult one to decide, and in such situations the law officer, who must act with dispatch, faces no easy task. Oftentimes he must not only properly analyze a confused fact situation, but he may be forced to deal with every color and shade of improbability. Quite often he is required to probe underdeveloped theories posed by the prosecution and defense. Necessarily, he must give the accused the benefit of any doubt as to the existence of a lesser included offense as an issue. Under these circumstances, it ought to be obvious that his judgment should not be overturned without good reason, and that we will not permit appellate defense counsel to obtain a rehearing here if certified trial defense counsel invites error by persuading the law officer to limit the issues at trial to guilty as charged or not guilty.

Thus far we have mentioned situations where the law officer accepted defense counsel's assessment of the trial disputes, but that is not the present case, for here we have a converse theory. Granted that we will not reverse when the law officer accedes to defense counsel's wishes, we must now determine whether he errs when he refuses to be controlled by defense counsel's desires, where the evidence supports his independent assessment of the issues.

In United States v Mallow, 7 USCMA 116, 122, 21 CMR 242, we had occasion to marshal some of our previous decisions in the instructional field, and said in passing:

". . . We have also permitted defense counsel to shape the issues of his case by consciously preventing the law officer from instructing on lesser included offenses put in issue by the evidence."

Relying on this language, appellate defense counsel now argue that the law officer must tailor his instructions to meet defense counsel's demands, and errs to the prejudice of the accused if he permits the court-martial—contrary

**716**

to counsel's wishes—to consider included offenses which are in issue. Thus, the controversy which presently divides the parties arises principally out of their interpretation of our language in Mallow.

We suppose we might confess that, when interpreted in its preferred sense, the word "prevent" was ill-chosen. Or we might point out that in Webster's New International Dictionary, 2d ed, page 1960, "prevent" is defined as meaning both "to deprive of hope or power of acting" and "to hinder (one about to act, proceed, arrive, etc.);—usually with *from;*" and simply choose the latter meaning, which does not suggest to us the right flatly to prohibit. We believe, however, that a far broader avenue of approach is implicit in our previous opinions.

We have said on numerous occasions that it is the law officer who is in charge of the trial proceedings and responsible for its orderly conduct. One of his most important functions is to give adequate, comprehensive instructions on the issues of the case. The trial of a criminal case is not a game to be regulated by the whims of counsel. If we are to build a real system of military justice, we must ensure that the law officer is shouldered with the responsibility of seeing to it that the court-martial members are given proper guideposts to reach a fair and just verdict, counsel for the parties notwithstanding. If he is to find his proper place in the scheme of military law, and bear his responsibility to the Government, the accused and the system, we do not believe he can be stripped of the right of final decision as to what instructional guidance will lead the court to a proper decision.

In our view, the law officer may accede to defense counsel's request and instruct only on those issues of guilt or innocence which are chosen by the accused's lawyer. If he permits the defense to gamble, in cases where no question of adequacy of counsel is raised, no claim of error will be recognized here. But if he has some doubt as to the wisdom of counsel's choice, or believes for some other reason that in-

structions on lesser included offenses should be given, and if the evidence supports his conclusion that those covered are in issue, he does not err if he refuses to permit the accused to gamble away his statutory rights. In the final analysis, the ultimate choice must rest in his hands. In this instance, we are certain he made a wise one.

## III

We come, then, to the second granted issue and the question of whether an instruction on involuntary manslaughter should have been given. This issue does not merit extended discussion as it involves primarily an interpretation of facts. A majority of the Court, namely the Chief Judge and Judge Ferguson, believes that that lesser included offense was raised as an issue and that the law officer, having instructed on voluntary manslaughter, was duty-bound to instruct on the other lesser crime which they conclude could be supported by the facts. On the contrary, the author Judge is of the opinion that the facts developed at the trial raised reasonably only the one included offense of voluntary manslaughter. Under that view, there would be no duty imposed on the law officer to instruct on the other included offense, and the second question would not be reached.

In view of the conclusion of the majority set out above, the following disposition is ordered. The finding of voluntary manslaughter and the sentence are set aside, and the record of trial is returned to The Judge Advocate General of the Army for reference to a board of review, which may order a rehearing on the homicide specification or affirm a conviction of the lesser offense of involuntary manslaughter and assess a proper sentence for the findings affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

In United States v Hobbs, 7 USCMA 693, 23 CMR 157, and United States v Walker, 7 USCMA 669, 23 CMR 133, I disassociated myself from the majority's method of disposing of a case by returning it to the board of review to permit that appellate tribunal to cure trial level error by an arbitrary reduction in the degree of the crime, together with an accompanying reassessment of the sentence. I believe error committed at the trial forum should be cured at that level by a rehearing rather than by a referral to a board of review for the approval of a lesser offense. The practice adopted by a majority of this Court is foreign to civilian appellate courts. The only apparent advantage such a practice offers is that it permits a case to be disposed of without the necessity of a rehearing thereby resulting in a savings to the Government of both time and money. Such an advantage—if one in fact does exist—is a dubious one indeed and is a poor substitute for a full-dress rehearing at the trial forum. My associates, however, are firmly wedded to this procedure and I have been unsuccessful in divorcing them from it. Their views have established the law of the Court in this area and I now reluctantly concur in this method of disposition.