UNITED STATES, Appellee

v

FRANCIS J. GALLAGHER, Private, U. S. Marine Corps, Appellant

12 USCMA 87, 30 CMR 87

*Lieutenant Colonel E. W. Johnson,* USMC, was on the brief for Appellant, Accused.

*Lieutenant Commander Raymond O. Kellam,* USN, was on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and sentenced to bad-conduct discharge, forfeiture of $40.00 per month for six months, and confinement at hard labor for six months. With some reduction in the sentence, intermediate appellate authorities affirmed, and we granted accused's petition for review on the question whether the president of the court-martial should have instructed its members on the defense of mistake of fact.

The accused allegedly stole three tires, three inner tubes, three wheels, and four hub caps, property of Acting Sergeant Jake Ledlow, Jr. The evidence adduced by the Government tends to establish that he drove with two other Marines, Phillips and Self, to a parking lot near the Main Gate of their station. The men were riding in Phillips' car. Something was said about "Somebody needed a tire." The three men pushed a Chevrolet belonging to Sergeant Ledlow to the end of the lot, and Self jacked it up. Phillips and the accused removed the tires and wheels and placed them in the back of Phillips' car. Subsequently, the items were mounted on Phillips' vehicle, and Phillips' tires were left with a friend of Self's.

Sergeant Ledlow gave no one permission to remove the tires and wheels from his car.

The accused appeared as a witness in his own behalf. He admitted accompanying Self and Phillips to the parking lot on the evening in question, after Self had borrowed a jack "to fix a tire on his car." He denied assisting in any manner in the removal of the tires, hubcaps, and wheels, and stated that he "thought it was Self's car." When asked whether he had reported the incident to any military policeman, the accused replied that he "didn't know they were stealing any tires." Self had previously told him that he drove a Chevrolet.

In a pretrial statement introduced by the prosecution in rebuttal, it was shown that the accused was aware that "Self told some people . . . that he had stripped down cars before out side of the gate." The accused resumed the stand as a witness and declared that he had, several months prior to the incident, heard that Self had boasted of "stripping" cars, but that he had not believed him.

Following arguments by counsel, the president delivered his instructions to the court. They extended to the elements of larceny and the lesser offense of wrongful appropriation, as well as certain other rules to be applied in measuring the evidence. However, he nowhere adverted to the defense of mistake of fact.

From the evidence in this record, it is clear that the accused consistently denied knowledge that a theft was taking place and asserted that he believed the car from which the tires were being removed belonged to Self. While

his testimony is in many respects inconsistent with that of the prosecution witnesses, it is in nowise inherently incredible. It, therefore, is sufficient to place in issue the defense of honest mistake of fact. United States v Bistram, 11 USCMA 345, 29 CMR 161; United States v Holder, 7 USCMA 213, 22 CMR 3. Accordingly, the president was obligated to instruct the members of the court-martial with respect to that doctrine. United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Farris, 9 USCMA 499, 26 CMR 279. His failure to do so was prejudicial error.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

QUINN, Chief Judge (concurring in the result):

In my opinion, the case turned on whether the accused was a mere innocent bystander, as he contended, or participated, or aided in the commission of the offense. Under the circumstances, the president should have instructed on the law relating to aiding and abetting. His failure to do so was prejudicial error. I, therefore, join in reversing the findings of guilty and the sentence.

LATIMER, Judge (dissenting):

I dissent.

This decision reverses accused's conviction but establishes no law, for, as the reader will note, my associates predicate their respective conclusions on different theories. Since I am unable to accept the divergent approach of either of my brothers, and because I find no infirmity in the findings or sentence, I am constrained to dissent.

In my view, the principal opinion misapplies the doctrine of mistake of fact. In certain cases which involve a specific intent, an honest mistake of fact is a defense for it negates a criminal state of mind. In larceny, the defense is recognized for when a person believes he is taking property rightfully, he does not intend to deprive the owner of his property. But that doctrine presupposes that the person asserting the defense actually took the property because he could not take mistakenly if he did not take at all.

In the case at bar, the accused while a witness in his own behalf denied taking any part in the criminal venture. According to his testimony, he was an innocent bystander. At no time did he ever advance the theory that he aided the other two offenders under the mistaken belief that the automobile accessories belonged to one of them. At best he asserted he was only an onlooker to what he believed was an innocent transaction.

Under that posture of the evidence, I fail to understand why a president of a special court is saddled with the responsibility of instructing *sua sponte* on the defense of mistake of fact. When accused testified he did not take property, the president of the court could not reject that evidence, assume a contrary position, and instruct on a hypothesis fitted to his own assumed facts. That would be suggesting to the court members that they disbelieve the sworn testimony of the accused and decide the case on a theory repudiated by him.

As to the rationale relied upon for reversal by the Chief Judge in his separate opinion, I merely point out that the Government's evidence showed accused to be as active a participant in removing and stealing the accessories from the car as were the other two culprits. He, on the other hand, denied having taken any part in stripping the automobile and testified that although present in the general vicinity, he was not even aware a crime was being committed. No evidence indicates, nor did anyone suggest, that accused was a lookout, or that he otherwise advised, facilitated or encouraged illegal activity by his companions. If he was an aider and abettor then we have all three participants in the same category, and there is a theft without a principal offender. Accordingly, I am quite unable to perceive wherein the law of aider and abettor is involved in this case. And apparently I am not alone

in my bewilderment, for this is the first time such a theory has been advanced. I can well understand why it was not advanced at trial, for defense counsel would not desire an instruction on a theory which would broaden the Government's chances for conviction. In fact, had a charge on aider and abettor been given, appellate defense counsel would doubtless now contend—and not without considerable merit, in light of the posture of the evidence—that the instruction constituted error requiring reversal.

We have repeatedly stated that in-structions are not required on theories not raised reasonably by the evidence. In the case at bar, the testimony upon which the instructions had to be predicated boiled down to the simple issue of whether the accused was a true principal in the theft. The Government witnesses testified he was, and he contradicted their testimony. Accordingly, I find that the instructions adequately informed the court on all issues raised reasonably by the plea and the evidence.

I would affirm the decision of the board of review.