UNITED STATES, Appellee

v

LAWRENCE F. KUEFLER, Airman Second Class,
U. S. Air Force, Appellant

14 USCMA 136, 33 CMR 348

No. 16,586

July 19, 1963

*Lieutenant Colonel Quincey W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major Robert Haynes* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general

court-martial convened by the Commander, 26th Air Division, at Otis Air

Force Base, Massachusetts, the accused was found guilty of two specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and one specification of housebreaking, in violation of Code, supra, Article 130, 10 USC § 930. He was sentenced to bad-conduct discharge, forfeiture of $55.00 per month for six months, and confinement at hard labor for six months. Intermediate appellate authorities affirmed, and we granted accused's petition for review upon issues involving the responsibility of the law officer, under the circumstances of the case, to instruct the court-martial upon the lesser offense of unlawful entry, as included within the charge of housebreaking.

At his trial, accused entered a voluntary and provident plea of guilty to the larceny of certain weapons and ammunition, on July 5, 1962, which he had feloniously taken from a weapons room in Building 165, Otis Air Force Base.[1] He pleaded not guilty to the charge of housebreaking, which involved his entry into the weapons room, with intent to commit the aforementioned larceny. The Government adduced evidence, including a voluntary pretrial statement by the accused, which tended to establish his guilt of larceny and of housebreaking, in violation of Code, supra, Article 130. In response to the case made out against him, the accused, as was his right, elected to testify in his own behalf.

Regarding the housebreaking charge, the accused admitted he unlawfully entered the weapons room in question. Nevertheless, he specifically denied such entry was made with the intent to steal. Pointing out that he had once previously entered the room because he "was only curious as to the contents," he declared he had been inside for approximately "five minutes" before he "decided to take these weapons." Questioned further, he declared:

"Q. When did you decide to take the guns?

"A. Well, sir, I walked around and it was only after I walked around

in there for a while and then I decided to take them.

. . . . .

"Q. For what reason did you enter the weapons room?

"A. Just curiosity.

. . . . .

"Q. Now you say you examined these things, you looked at these things for approximately five minutes?

"A. Yes, sir.

"Q. And prior to that time you had no intention of taking away pistols and/or ammunition?

"A. No, sir.

. . . . .

"Q. Now, when you had satisfied your curiosity . . . then you intended to climb back over the wall and go back downstairs to be with your friends, is that so?

"A. Yes, sir, in a sense until I decided to take these weapons.

"Q. Now, prior to your decision to take the weapons, this was your intention to examine these things and then to leave?

"A. Yes, sir."

Presentation of the accused's testimony concluded the defense case. The major portion of the arguments of the trial and defense counsel were directed to the proposition whether the accused possessed the necessary intent to steal at the time of his entry into the weapons room. The law officer's instructions with respect to the housebreaking addressed themselves only to the elements of that offense, and he made no reference to the included offense of unlawful entry. Parenthetically, we note that the law officer held no out-of-court hearing on the subject of his instructions, although the record indicates a two-hour recess was taken for the purpose of devoting his personal attention to their preparation. The sole occasion devoted to this important matter seems to have been a brief sidebar conference in which inquiry was made of counsel whether any "special instructions" were desired.

---

[1] The other larceny specification, of which accused was properly found guilty, is not involved in the controversy before us.

We mention this sequence of events as a possible explanation of why defense counsel, after presenting the accused's evidence and arguing his theory of the case, failed utterly to insure that it was submitted to the court-martial, for it would appear that he was relying on the law officer's responsibility to instruct *sua sponte* on all lesser included offenses which were reasonably placed in issue, as indeed is that functionary's duty. We emphasize, therefore, the desirability of out-of-court hearings in general courts-martial, at which the subject of appropriate instructions may be discussed and the parties fully advised of the intentions of the law officer in the premises. Use of such a procedure will tend to eliminate omissions and cause the case to be submitted to the court in a complete and proper fashion.

Turning to the evidence in the case before us, we are met with the argument—adopted by the board of review and the staff legal officer—that the accused's testimony does not reasonably place in issue the lesser included offense of unlawful entry, as his denial of entering the weapons room with larcenous intent is inherently unbelievable. Cf. United States v St. Pierre, 3 USCMA 33, 11 CMR 33, and United States v Bistram, 11 USCMA 345, 29 CMR 161. We wholly reject this contention. The credibility of accused's denial of the existence of an intent to steal when he entered the weapons room was a question of fact to be resolved by the court members.

In United States v Remele, 13 USCMA 617, 33 CMR 149, also involving a question whether the accused's testimony was sufficient to raise an issue requiring additional advice to the court members, we declared, at page 621:

"The mental state which accompanies the accused's acts normally must be inferentially established by the United States as, absent a voluntary confession, it necessarily cannot probe his faculties to determine precisely what cerebrations led him to do that which forms the basis of the charge against him. *On the other hand, the accused is under no such restraint and has the capacity to testify directly to the intent, knowledge, or other mens rea which fills out and characterizes his acts either as criminal or legally blameless."* [Emphasis supplied.]

As in the *Remele* case, this accused testified precisely to the mental state which animated him to enter the weapons room and expressly denied that he so acted with the criminal intent necessary to convict him of housebreaking. And, as Judge Kilday, concurring, recently noted in United States v Jones, 13 USCMA 635, 33 CMR 167, at page 640:

". . . [T]he reasonable character of the explanation was for the determination of the court-martial, under proper instructions. As stated in Young v United States, 309 F2d 662 (CA DC Cir) (1962):

'. . . However implausible, unreliable or incredible only the jury had the right to make the evaluation of West's testimony. The evidence of a simple assault [appellant was convicted of assault with intent to commit robbery] cannot be regarded as strong or convincing and perhaps the source could well be regarded as of dubious reliability, but the question of its weight and credibility was for the jury. . . . The ruling denying the lesser included offense instruction necessarily involved an appraisal of that evidence and West's credibility by the District Judge but the trier cannot withdraw that appraisal from the jury. Kinard v United States, 68 App DC 250, 96 F2d 522 (1938). See also Stevenson v United States, 162 US 313, 323, 16 S Ct 839, 40 L ed 980 (1896).'"

See also United States v Black, 12 USCMA 571, 575, 31 CMR 157, 161; United States v Smith, 13 USCMA 471, 479, 33 CMR 3, 11; and United States v Burton, 13 USCMA 645, 646, 33 CMR 177, 178, each of which establishes the proposition that instructions on a special defense or lesser included offense must be given if there is in the

record some evidence, *i.e.*, proof from which the court members could entertain a reasonable doubt concerning accused's guilt of the crime charged, to place the matter reasonably in issue.

Accused's story may be implausible; it may have been rejected by the fact finders; and, indeed, it may, in light of the other evidence, smack of an afterthought by which he sought to escape his just deserts. But neither this Court, the board of review, nor the convening authority has the right so to pass upon accused's credibility as, by giving controlling weight to the evidence countervailing his declarations concerning the state of his own mind, to reject his testimony as incapable of presenting an issue of fact for decision by a *nisi prius* body. So to act is to make a "choice which was exclusively a jury choice." Young v United States, 309 F2d 662, 663 (CA DC Cir) (1962). In this respect, and with particular reference to the facts of the case before us, we call attention to the language of the late Mr. Justice Jackson, in Morissette v United States, 342 US 246, 96 L ed 288, 72 S Ct 240 (1952), a case which should be read and reread by law officers and all others having responsibility for the administration of military justice. It seems to us that the following language, found at page 273, is peculiarly applicable to the problem we resolve here:

"As we read the record, this case was tried on the theory that even if criminal intent were essential its presence (a) should be decided by the court (b) as a presumption of law, apparently conclusive, (c) predicated upon the isolated act of taking rather than upon all of the circumstances. In each of these respects we believe the trial court was in error.

"Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. State court authorities cited to the effect that intent is relevant in larcenous crimes are equally emphatic and uniform that it is a jury issue. The settled practice and its reason are well stated by Judge Andrews in People v Flack, 125 NY 324, 334, 26 NE 267, 270, 11 LRA 807:

'It is alike the general rule of law and the dictate of natural justice that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system (unless in exceptional cases), both must be found by the jury to justify a conviction for crime. However clear the proof may be, or however incontrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury. Jurors may be perverse; the ends of justice may be defeated by unrighteous verdicts, but so long as the functions of the judge and jury are distinct, the one responding to the law, the other to the facts, neither can invade the province of the other without destroying the significance of trial by court and jury. . . .'"

So also do trial judges and appellate bodies interfere with the function of the court members and deprive the accused of his right to a primary trial on the facts when the credibility of his claims is found wanting in light of the strong case against him. We hold, therefore, that there is in this record some evidence reasonably placing in issue the lesser included offense of unlawful entry and that the failure of the law officer to instruct thereon was prejudicial error.

The findings of guilty of Charge II and its specification and the sentence are set aside. The record of trial is returned to The Judge Advocate General of the Air Force. In light of the accused's judicial confession to the lesser included offense of unlawful entry, the board of review may affirm findings of guilty of that offense and reassess the sentence on the basis of such findings and those relating to Charge I and its specifications. Otherwise, it may order a rehearing on Charge II and the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

The failure to instruct on a lesser offense placed in issue by "sufficient credible evidence" is reversible error, unless the omission is waived by the defense. United States v Farris, 9 USCMA 499, 501, 26 CMR 279; cf. United States v Holley, 5 USCMA 661, 664, 18 CMR 285; United States v Remele, 13 USCMA 617, 33 CMR 149. This record of trial does not contain such evidence.

The accused was charged with breaking into a weapons room with the intent to commit larceny. The room was in the upper part of a two-story aircraft dock; it was partitioned off from a larger area by plywood walls, with chain link fencing stretched across the top to form the ceiling. The room contained "decontamination equipment," several racks of carbines and .45 caliber pistols, and a chest of ammunition. Testifying in his defense, the accused admitted he entered the room through an opening in the ceiling where the fencing had come loose from the wall. He also admitted he stole four pistols and some ammunition. The question on this appeal is whether his testimony also shows that at the time he entered the arms room he had no intention to commit any offense therein.

About a month before the offenses charged, the accused learned that some of the staples securing the fencing to the top of the partition walls of the arms room had been removed. That same night he entered the room. Although he did not specifically say how he made the entry, inferentially, it appears he raised the ceiling fencing at the place where the staples had been removed, and slipped through. The accused said he made the first entry because he was "only curious as to the contents of the room." About 9:30 on the night he made the entry which led to the present charge, he and two other airmen left their duty section to get "cokes" from a dispensing machine located in a building beyond that which contained the weapons room. The trio allegedly had "some time . . . to kill" and "just walk[ed] around on . . . [the] way over to get" the cokes. As they reached the structure housing the arms room the accused, on the "spur of the moment," left his companions downstairs while he went to the upper level. He testified he was "Just curious" and wanted "To look around."

After about five minutes of looking around the upstairs section, the accused mounted a table, which was at one of the walls of the arms room, and looked inside the enclosure. By this time he "had decided to go in"; he attempted to get on the wire ceiling but it "was too weak" to support his weight at that point. He, therefore, moved to the other side "where the top had been loosened." He "opened it up" and went into the arms room. He testified that his reason for entering the room was "Just curiosity." He said he intended only "to examine" the room and its contents "and then . . . leave." But after he had looked around for about five minutes, he "decided to take these weapons." With a screwdriver, which he carried in his hip pocket, he forced the padlock that secured the pistols and removed four from the rack. He also broke the lock on the ammunition chest, and took a number of boxes of .45 caliber ammunition.

According to the accused, he took four pistols because it "was . . . [his] intention to, in a sense, get two of them for the other fellows that were downstairs," "one for someone else," and one for himself. He had "a good idea" the others would accept the guns he took for them, but if "they hadn't . . . [he] would have put them back." It turned out that they "took" the guns. In fact, they came upstairs as the accused endeavored to leave the weapons room. One of them "got on top and helped . . . [him] out"; the other helped him with the ammunition.

Truth is indeed stranger than fiction. I have no doubt that some of the scientific accomplishments of this century exceed the conceptions of the most imaginative fiction writers of the last century. Nor do I doubt that, with some three billion people inhabiting the world, there are enormous differences

140

in individual motivation and conduct; and what is reasonable to one, may be absurd and ridiculous to another. Ordinarily, testimony by an accused to the effect that he entertained a particular state of mind at the time of the commission of the act for which he is being prosecuted "cannot be summarily rejected by a law officer or an appellate court because it does not ring true." United States v Apple, 2 USCMA 592, 595, 10 CMR 90. In other words, whether an accused's testimony is true or false rests in the first instance with the court-martial, which must determine his guilt or innocence. A finding of fact, however, must be based upon the probable, not the impossible; upon the reasonable, as it exists in normal, human experience, not upon the unreasonable. "[M]ere possibility," said the Court of Appeals for the District of Columbia, "is not an affirmative basis for a finding of fact." Martin v United States, 284 F2d 217 (CA DC Cir) (1960); see also United States v Wright, 6 USCMA 186, 190, 19 CMR 312; United States v Jenkins, 1 USCMA 329, 3 CMR 63.

In framing instructions, the law officer acts on the basis of the evidence. He is expected, and required, to use judgment and discretion in evaluating the evidence to determine the content of his instructions. United States v Lyons, 14 USCMA 67, 33 CMR 279. The patent unreliability of the Government's witnesses may require him to grant a motion for a finding of not guilty. See United States v Scales, 10 USCMA 326, 27 CMR 400. "A conviction," observes the Manual for Courts-Martial, "cannot be sustained solely on the self-contradictory testimony of a particular witness . . . if the contradiction is not adequately explained by the witness in his testimony." Manual for Courts-Martial, United States, 1951, paragraph 153a. And, in a sex prosecution, or in the case of testimony by an accomplice, a conviction cannot rest on the uncorroborated testimony of the victim or the accomplice "if such testimony is self-contradictory, uncertain, or *improbable*." (Emphasis supplied.) *Ibid;* United States v Zeigler, 12 USCMA 604, 31 CMR 190. Beyond these situations is the fundamental rule that the evidence must show a reasonable doubt of guilt, not merely "some degree of doubt" to justify acquittal. Green v United States, 289 F2d 765, 766 (CA DC Cir) (1961); see also United States v O'Neal, 1 USCMA 138, 144, 2 CMR 44. All the rules point to the conclusion that an appellate court can demand no more from a law officer than what is reasonable under the circumstances. It has been noted that if we cannot say "on the record as we find it that reasonable men must necessarily have found one way or the other," there is no issue for the consideration of the triers of fact. Martin v United States, supra, page 220. Manifestly, the law officer is not required to instruct on a nonexistent issue of fact. United States v Bistram, 11 USCMA 345, 29 CMR 161; United States v Ferenczi, 10 USCMA 3, 27 CMR 77. Consequently, in reviewing a claim of prejudice because of an alleged error in the instruction, an appellate court may consider whether the evidence relied upon to support the claim is "inherently unbelievable." See McAbee v United States, 294 F2d 703, 706 (CA DC Cir) (1961).

The accused's contention that he entered the weapons room only out of curiosity is so inconsistent with all the other evidence in the case "as to stamp the claim as inherently unbelievable." United States v Bistram, supra, page 347. Just as a shred of evidence of guilt is not enough to sustain a conviction, a shred of evidence as to a lesser offense is not enough to require an instruction thereon. See United States v Backley, 2 USCMA 496, 9 CMR 126. In the absence of a request, the law officer was justified in not giving an instruction on the lesser offense of unlawful entry. United States v Bistram, supra; United States v Holley, supra; McAbee v United States, supra.

I would affirm the decision of the board of review.