UNITED STATES, Appellee

v.

EVERETT J. BACKLEY, Private–2, U. S. Army, Appellant

2 USCMA 496, 9 CMR 126

No. 1588

Decided May 12, 1953.

LT COL James C. Hamilton, U. S. Army, and 1ST LT Richard B. Dempsey, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Robert A. Forman, U. C. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

An Army general court-martial has convicted the accused, Backley, of an assault in which grievous bodily harm was intentionally inflicted with a weapon, a violation of the Uniform Code of Military Justice, Article 128, 50 U.S.C. § 722. Following approval by the convening authority and affirmance by a board of review, this Court granted accused's petition for further review, limited, however, to a single issue:

"Whether the failure of the law officer to instruct on intoxication as relating to specific intent was prejudicial error."

II

The operative facts are not complex.

At the time of the offense the accused and several other soldiers were gathered in a tent. The accused had been speaking of a friend who recently had been bayoneted by the enemy. Suddenly, and wholly without provocation, he plunged a bayonet through the right thigh of one Private Williams. The resulting injury was quite serious, and eventually necessitated amputation of the lower third of Williams' injured leg. There was no history whatever of bad blood or ill feeling between accused and his victim. Five prosecution witnesses, in the course of their testimony, disclosed either that accused "had been drinking", that he was "drunk", or that he was "pretty well drunk". The defense also called a witness who testified to

**497**

accused's intoxication at the time of the offense, and there was evidence that his speech was "not normal" and that he staggered as he walked. A psychiatrist was questioned at length concerning the effects of intoxication and its bearing on ability to formulate a specific intent. The law officer, in his instructions to the court-martial, fully stated the elements of the offense charged, and also defined the lesser included offenses of assault and battery and assault with a dangerous weapon. He did not, however, instruct at all concerning the legal effect of intoxication. This latter has given rise to the question stated: was his failure to do so prejudicial error?

### III

The offense of which accused stands convicted requires a specific intent to inflict grievous bodily harm. This conclusion is compelled by the ▆▆▆▆ very language of the crime's definition. The Code, supra, Article 128(b)(2). See also the Manual for Courts-Martial, United States, 1951, paragraph 207b (2). Granting the existence of service authority to the contrary—although our attention has been directed to none by appellate Government counsel—we are unimpressed by any such view, and do not hesitate to hold that a conviction of the offense charged here demands the finding of a specific intent to inflict grievous bodily harm.

Only recently have we had occasion to repeat and summarize what we said in earlier opinions with respect to the necessity for instruction on the effect of intoxication as bearing on specific intent. United States v. Larry J. Miller, (No. 1021), 7 CMR 70, decided February 13, 1953. The long and short of the matter is that, where ▆▆▆▆ the drunkenness of the accused at the time of the offense is fairly raised by evidence in such a posture as to suggest a reasonable possibility that the intoxication was of a kind and extent likely to affect the ability of accused to entertain a specific intent, the law officer is required to instruct (1) on the legal effect of intoxication in relation to spe-

cific intent, and (2) as to the elements of lesser offenses not involving such an intent, if any. Of course, where the principal offense charged does not require a specific intent, the condition of the accused as regards sobriety is irrelevant. Perhaps we should attempt to make even clearer what is in our minds on this subject. This much may be said. Evidence which goes no further than to indicate merely that the accused "had been drinking," or that he was "under the influence of liquor," is clearly insufficient to require an unrequested instruction on intoxication. At the far swing of the pendulum, testimony or other evidence suggesting that at the time of the alleged offense the offender was the victim of a temporary drunken frenzy, or in what we once described as "a state of ambulatory stupefaction", with equal clarity demands such an instruction. These limits, we believe, must be accepted by all. Indeed, it is only the ground between them which is productive of doubt and uncertainty—and perforce of petitions for review by this Court. As to this area, it may suffice to observe that the showing we contemplate as requiring instruction must certainly be one of *intoxication*—and, moreover, intoxication *of a certain degree and sort,* characterized by a discernible relationship to the potential absence of a capacity to entertain specific intent. Although intoxication, at least, must be fairly raised, it must be recognized that this condition involves aspects of quality and pitch, and that not every intoxication will necessarily be deemed by us to demand the instructions outlined earlier in this opinion.

In the present case, however, the evidence assuredly was sufficient to require instruction on the legal effect of intoxication—and ▆▆▆▆ resultantly on the elements of lesser offenses in which specific intent is not an element. This conclusion is bottomed not only on substantial and undisputed direct testimony indicating the existence of a high degree of intoxication—which came, be it noted, principally from prosecution witnesses —but as well on the circumstances surrounding the commission of the offense,

including the accused's conduct at the time and later. A factor of particular importance, as we see it, is the wholly inexplicable and irrational nature of the accused's act in violently attacking an unsuspecting friend between whom and the former no sort of quarrel—or even momentary disagreement—existed. The law officer did, in fact, instruct concerning lesser offenses, and thus his failure was not—quantitatively speaking—complete. However, in the view we have previously taken, the two requirements march hand in hand. A bare instruction as to the legal effect of intoxication is meaningless without accompanying instructions on appropriate lessor included offenses. The converse is likewise true, we are constrained to believe —and this was the situation in the instant case. The accused here was convicted of an offense requiring a finding of specific intent—and without necessary instructions as to the bearing of his intoxication on that intent. A mere statement of the elements of lesser offenses—without more—cannot be said to have apprised the court-martial of the legal effect of intoxication. Therefore, unless there is some distinguishing factor present in the record before us, our previous decisions permit no conclusion other than that the law officer's failure was prejudicial error.

In this last connection it is urged that we should not leave out of account the brief examination of the medical officer by the court reported in the record. This verbal exchange—the argument continues—indicates that the members of the court-martial in fact comprehended fully the bearing of temporary intoxication on mental responsibility, and thus rendered instruction on the subject an unnecessary and empty gesture. We cannot accede to this view. In the first place the record of trial does not disclose with any sort of assurance the number of court members who participated in the examination. On the basis of the report contained therein, it is even possible that only one member engaged in the court's examination. Second, the questions directed to the psychiatrist reflect not understanding, but instead utter and consummate confusion on the part of the inquirer or inquirers. Finally—and conceding arguendo that *all* members of the court participated, and all understood the *medical* bearing of drunkenness on insight—the record passage involved completely fails to indicate any sort of appreciation on the part of the court-martial's membership of the *legal* consequences of the medical data with which the examination was concerned. Accordingly, we see no sound basis for distinguishing between this case and applicable decisions of this Court heretofore rendered, and we hold that the failure of the law officer here to instruct on the legal effect of intoxication was prejudicial—and hence reversible—error.

On the basis of the complex of evidence produced at the trial, the only lesser offense not involving specific intent fairly raised as a reasonable alternative to the offense charged was assault with a dangerous weapon. The evidence did not, we believe, require instruction on mere assault and battery, or a fortiori as to simple assault. However, we may purge the prejudice resulting to accused from the law officer's error by affirming the conviction in so far as it extends to guilt of assault with a dangerous weapon only. United States v. Baguex, (No. 699), 8 CMR 106, decided March 13, 1953.

Accordingly, the conviction is affirmed, but only in so far as it extends to guilt of assault with a dangerous weapon. The record is returned to The Judge Advocate General, United States Army, for reference to the board of review which considered the case for reconsideration of appropriateness of sentence.

Chief Judge QUINN and Judge LATIMER concur.