UNITED STATES, Appellee

v

JULIUS H. SASSER, Airman First Class,
U. S. Air Force, Appellant

11 USCMA 498, 29 CMR 314

Lieutenant Colonel James L. Kilgore and Major Charles K. Rush were on the brief for Appellant, Accused.

Colonel John F Hannigan and Major John C. Wiley were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty of assault whereby grievous bodily harm was intentionally inflicted, in violation of Uniform Code of Military Justice, Article 128, 10 USC § 928. He was sentenced to bad-conduct discharge, forfeiture of $50.00 per month for six months, confinement at hard labor for six months, and reduction to Basic Airman. Intermediate appellate authorities affirmed, and we granted review on the issue whether the president erred prejudicially in failing to instruct, *sua sponte*, on the elements of the lesser included offense of assault with a dangerous weapon.

The facts of this unfortunate case are not complicated. Accused and several other airmen embarked upon a tour of local bars near their station in North Africa. An altercation arose between accused and one Sullivan over whether the former should purchase a round of drinks. Sullivan struck the accused. Accused retaliated by severely and repeatedly stabbing Sullivan with a pocket knife.

The evidence is in conflict concerning the extent of accused's intoxication. Some witnesses testified only that he had been drinking. Accused declared that he had imbibed considerably and, in fact, was so intoxicated he could not recall stabbing Sullivan. A medical examination of the accused, conducted approximately two hours after the incident, indicated he was at that time, yet mildly to moderately intoxicated. Expert testimony also established that the degree of accused's drunkenness would diminish during the period which elapsed between the incident and the examination and indicated the possibility that the attack upon Sullivan would, in itself, have a sobering effect.

The president properly instructed the court-martial on the elements of the offense charged, the lesser included offense of assault and battery, and the effect of intoxication upon accused's capacity to entertain a specific intent. He omitted advising the members concerning the elements of the lesser included offense of assault with a dangerous weapon.

Our initial inquiry must be whether the evidence in this record reasonably raises an issue concerning intoxication as a defense. The Government urges that it does not, whereas the accused is equally certain that it does. We are sure the defense position correctly reflects the state of this record, for accused's testimony, coupled with the results of the later medical examination, is sufficient to cause reasonable men to be concerned with his ability to entertain the requisite specific intent. United States v Craig, 2 USCMA 650, 10 CMR 148. Counsel for the Government would have us weigh the evidence on either side and reject the accused's judicial declarations. That we may not do. United States v Simmons, 1 USCMA 691, 5 CMR 119; United States v Apple, 2 USCMA 592, 10 CMR 90. As the Chief Judge pointed out in United States v

Farris, 9 USCMA 499, 26 CMR 279, at page 501:

". . . In considering that issue it should be emphasized that we are not concerned with whether the evidence is sufficient as a matter of law to sustain the court-martial's findings. Neither are we concerned with the weight to be accorded the accused's testimony. United States v Swain, 8 USCMA 387, 24 CMR 197. The question is merely whether the record of trial contains sufficient credible evidence raising an issue for the court-martial's consideration."

Having concluded that the accused's capacity to entertain the specific intent involved in the offense ██ charged was placed in issue by the evidence relating to his drunkenness, it is clear that the president did not fulfill his duty by instructing on the affirmative defense of intoxication alone. He was also required to advise the members of the court-martial of those lesser included offenses which did not involve proof of a specific intent and which were thus placed in issue. As we pointed out in United States v Backley, 2 USCMA 496, 9 CMR 126, at page 499:

". . . [T]he two requirements march hand in hand. A bare instruction as to the legal effect of intoxication is meaningless without accompanying instructions on appropriate lesser included offenses."

We are constrained, therefore, to hold that the president of the special court-martial erred to accused's ██ prejudice when he failed to ██ advise the court of the elements of assault with a dangerous weapon. The damaging effect of the omission may be cured only by ordering a rehearing or by affirmance of the least lesser offense reasonably raised by the evidence and reassessment of the sentence. United States v Clay, 9 USCMA 582, 26 CMR 362; United States v Baguex, 2 USCMA 306, 8 CMR 106; United States v Backley, supra. In this case, the least alternative reasonably placed in issue was undeniably assault with a danger-

ous weapon. Accordingly, that offense may, at its option, be approved by the board of review.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. The board may affirm so much of the findings of guilty as relate to assault with a dangerous weapon and reassess the sentence, or order a rehearing.

Chief Judge QUINN concurs in the result.

LATIMER, Judge (dissenting):

I dissent.

This is an unnecessary reversal, for even if error be conceded there was no prejudice to the accused and no reasonable probability that he will receive any benefit from the action taken by a majority of the Court. While the principles of law stated in Judge Ferguson's opinion are academically correct, in this setting they are of no significance. Moreover, while the record does not in so many words show that defense counsel was the architect of the instructions, it is a fair inference that the charge given by the president to the court met with his hearty approval. And in this connection, I call attention to the fact that he was a certified lawyer.

The case was tried before a special court-martial and the maximum sentence imposable was a bad-conduct discharge, six months' confinement, two-thirds forfeitures for the same period, and reduction. The principal offense alleged carries a maximum penalty of dishonorable discharge, five years' confinement, total forfeitures, and reduction. Assault with a dangerous weapon —the offense which my brothers say may be affirmed by a board of review— permits the same punishment as the most serious crime, except the period of confinement does not exceed three years. The only included offense for which the maximum punishment does not exceed the jurisdictional limits of a special court-martial is assault and battery, and conviction of that crime does not permit the imposition of a punitive discharge.

The facts of the case compel a finding that an assault was committed and that a knife, razor or other sharp instrument was used in a dangerous manner. Sixty stitches were required to sew up the various injuries, and the victim was hospitalized for twelve days. As the drama unfolded, the only real issue which developed was whether the accused was intoxicated to the extent that he could not form the specific intent to injure. Under the clear and precise instructions on intent and intoxication, the court-martial members found he was able to do so. Obviously, the argument is made that they were compelled to find all elements of the greater offense present, for they were offered no reasonable alternative. That argument is exploded, however, for the president stated specifically:

". . . Should you fail to find beyond a reasonable doubt that the accused intentionally inflicted grievous bodily harm to Raymond M. Sullivan, Junior, then you may not find him guilty of assault with intent to inflict grievous bodily harm; however, you may, by appropriate exceptions and substitutions, find him guilty of the lesser included offense of assault and battery, if you are satisfied that the elements of such lesser included offense have been established by legal and competent evidence beyond a reasonable doubt."

The next step in the process of reasoning is to assert that had the court been instructed on the lesser aggravated offense of assault with a dangerous weapon, it might have returned a finding of guilty of that crime, even though it would not reduce the offense to assault and battery. That much may be conceded, although the evidence would suggest to the contrary, but that is not what accused wanted and, much more to the point, it would have been of no importance to him. He was earnestly seeking to remain in the Air Force and he hoped to escape the imposition of a punitive discharge. A conviction of an assault with a dangerous weapon would, because of its nature and degree of seriousness, dash any hope of a sentence which would not include separation from the service.

Accused's only hope to escape that sort of penalty was that the court might find him not guilty or convict him only of assault and battery. Either of those findings would preserve his status in the Air Force, and that must have been trial defense counsel's strategy for he joined in, and took no exceptions to, the instructions given. Significantly, that is the choice the president gave to the court-martial if it concluded the offense alleged in the specification had not been established beyond a reasonable doubt. Thus it will be observed that the alternative really benefited the accused, because if the court chose to go to a lesser offense it was limited to a misdemeanor as assault and battery would allow the court to impose only six months' confinement and two-thirds forfeitures. The additional alternative suggested by my associates would allow the court to find in the felony class of crimes and any finding in that category would make no difference in the instructions on sentence.

Aside from the foregoing, I wonder what prejudice the accused suffered by the alleged error. It can be argued that the conviction which may be sustained under the instant decision carries less maximum confinement than the crime alleged and, therefore, he is harmed. But that contention is more visionary than real, for both are aggravated assaults in the felony category and, when tried in an inferior court, sentencewise one is as serious as the other. The only other contention which can be advanced is that the punishment might be less severe if the findings were in the lesser degree. Under different circumstances, there might be some validity to that argument, but here the president of the court followed the law of this Court and did not inform the court-martial of the maximum penalty imposable. All he told them was this:

"The court is advised that the maximum penalty which may be imposed in this case is a bad conduct discharge, confinement at hard labor for six months, forfeiture of two-thirds pay per month for six months, and a reduction to Basic Airman. The court is further advised that a sentence to confinement at hard labor

does not automatically operate to reduce the airman involved to the lowest enlisted pay grade and that a reduction to Basic Airman or any intermediate pay grade below the present grade of the accused must be specifically stated as a part of our sentence to be effective."

The same instruction would have been given had the court reduced the findings to assault with a dangerous weapon. Accordingly, the court-martial would not know whether the maximum penalty for the offense found was five years or three years. All the members can be charged with is knowledge that six months' confinement with appropriate accessories was the maximum sentence imposable. Under our prior decisions they are barred from learning the punishment set forth in the Table of Maximum Punishments and so I ask, how can it be argued that if the members had found assault with a dangerous weapon and if they had known the maximum sentence under the Table of Maximum Punishments was three years, they might possibly have rendered a sentence less severe than the one imposed? The only scale they had was the jurisdictional limit and that was the same regardless of findings.

Finally, before reversing a case there ought to be some possibility that the accused will better himself, but in light of the findings which the board of review is permitted to affirm, it will be a miracle if accused reaps any good from this decision.

I would affirm the decision of the board of review.