UNITED STATES, Appellee

v

EUGENE YOUNG, Private First Class, U. S. Army, Appellant

18 USCMA 324, 40 CMR 36

No. 21,697

May 16, 1969

*Captain Norman L. Blumenfeld* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major David J. Passamaneck.*

*Captain Warren W. Kaufman* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

Opinion of the Court

QUINN, Chief Judge:

Awakened from a drunken sleep on the front seat of his car, which was parked on post at Fort Benning, Georgia, the accused was precipitated into a situation which left him facing charges of disrespect toward a superior officer, lifting up a weapon

against the same officer, and willful disobedience of a command by the officer to report to his place of duty.[1] A general court-martial convicted him as charged, together with an unauthorized absence to which he pleaded guilty, and sentenced him to a dishonorable discharge, confinement at hard labor for five years, and accessory penalties. On this appeal, the accused challenges the sufficiency of instructions as to the offense of lifting up a weapon against a superior officer.

The accused was a "first cook" at the 182d Aviation Company Mess Hall. He was scheduled to work on the morning of December 1, 1967, but failed to appear at the regular time. A mess attendant was dispatched to find him. He located the accused and returned to the mess hall to report the accused was "drunk, passed out" in his car. The mess sergeant went out to look at the accused, and concluded he "couldn't do no good." As a result, the mess officer was notified. He and two noncommissioned officers from the mess went to the accused's car. They found him asleep. After some effort, they succeeded in arousing him and getting certain responses to their oral proddings during a fifteen to twenty minute period. We need not recount or reconcile the various versions of what transpired. Suffice it that, in the mess steward's opinion, the accused was under the influence of liquor and was not "in any condition to work." He also believed it was "possible" that at times the accused did not know what he was doing or saying, but at other "times he knew who he was talking to" because he addressed the mess officer by name. The mess officer testified that, during the period the offenses were committed, the accused "sometimes" just stood without saying anything, and when he finally went to the orderly room his condition was such that "he wasn't making a lot of sense."

At trial, the law officer advised the court members there was "considerable evidence" of intoxication, and he observed that the Government had "conceded that the accused was drunk." He thereupon instructed the court members to consider the evidence of intoxication in connection with their deliberations on the accused's ability to know the mess officer was his superior officer and in regard to whether the accused had sufficient mental capability at the time to willfully disobey the order to report to the mess hall. However, the law officer failed to instruct as to the lesser offenses that might be considered, if the court members were not convinced beyond a reasonable doubt the accused knew the mess officer was his superior and could willfully disobey the order.

Instructions which define the effect of intoxication as to an offense charged, but do not delineate the lesser offenses that are resultantly placed in issue are erroneous. United States v Backley, 2 USCMA 496, 499, 9 CMR 126; United States v Miller, 2 USCMA 194, 7 CMR 70. On the initial review, the staff judge advocate recognized this deficiency in the instructions. While he made appropriate recommendations to cure the error as to the willful disobedience charge, he recommended affirmance of the findings of guilty of the offense of lifting up a weapon against a superior officer on the ground that "throughout the entire incident" the accused called the mess officer by name and rank and, therefore, "the court could not have reasonably concluded that the accused was so intoxicated that he did not know" the officer was his superior officer. The convening authority took action in accordance with these recom-

---

[1] The officer involved had only recently been graduated from Officer's Candidate School and had "never come across the situation before." It is manifest from the record that he was unaware of, or had overlooked, Colonel Winthrop's historic observation: "That express orders should never be given to a soldier when under the influence of intoxicating drink, has been repeatedly insisted upon in Orders." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, footnote 10, page 573; see also United States v Cave, 17 USCMA 153, 37 CMR 417.

mendations. As sketchy as it is, the evidentiary summary we have set out indicates the faultiness of the conclusion. Plainly, during the period of the incident there were moments of time when the accused seemed to be aware of, and to understand, what was taking place; but there were also moments when he was manifestly so befuddled and bemused as to be merely in a state of "ambulatory stupefaction." United States v Miller, supra, at page 195. Depending upon the weight accorded to different parts of the several versions of the testimony, one view of the evidence reasonably supports a conclusion that the accused might have been in the latter state in the interval between the time he picked up the weapon from the back seat of his car to the time he gave it to one of the noncommissioned officers. The law officer, therefore, was entirely correct in instructing on the effect of intoxication on the essential elements of this offense. Unfortunately, his instructions were incomplete.

Appellate Government counsel contend the instructional deficiency did not prejudice the accused. They argue that the state of mind required for willful disobedience of an order is different from the state of mind required to know consciously that one is confronting a superior officer; and, in their view, each mental state is differently affected by intoxication. We see no need to explore the legitimacy or the limits of this argument. Cf. United States v Caillouette, 12 USCMA 149, 30 CMR 149, opinion by Judge Latimer. The degree of intoxication disclosed by the evidence fully justified submission to the court members of the question of its effect upon the accused's mental capacity to know he was dealing with a superior officer. It is true, of course, that the court members decided the matter against the accused, but their finding on this point did not eliminate the harm from the failure to instruct on the alternative lesser offenses the court members could have considered. As we pointed out in a similar situation in United States v Drew, 1 USCMA 471, 474, 4 CMR 63: "It is not for us to determine precisely what the court would have found had it been correctly instructed." We conclude, therefore, that the failure to instruct on the lesser offenses raised by the evidence prejudiced the accused, not only as to the willful disobedience charge, as the staff judge advocate indicated, but also as to the charge of lifting up a weapon against a superior officer.

Instructional error of the kind we have considered can be cured in a number of ways not requiring further proceedings at the *nisi prius* level. United States v Backley, supra. A different course, however, is indicated by the record here. The court members were patently concerned with the weapon offense, and this offense was obviously the dominant influence in their deliberations on the sentence. The interests of justice, therefore, would appear to be better served by "a primary rather than a 'secondary and derivative' redetermination of the sentence." United States v Voorhees, 4 USCMA 509, 531, 16 CMR 83.

The decision of the board of review as to specification 1, Charge II, and the sentence is set aside. The record of trial is returned to the Judge Advocate General for submission to the convening authority. In his discretion, the convening authority may dismiss the specification and direct a rehearing of the sentence on the basis of the remaining findings of guilty, or he may order a rehearing as to both the specification and the sentence.[2]

Judges FERGUSON and DARDEN concur.

---

[2] We commend to the convening authority's attention the observations of Colonel Winthrop, which we have quoted in Footnote 2.