UNITED STATES, Appellee

v

JOEL JOHNSON, Ship's Serviceman Third Class,
U. S. Navy, Appellant

7 USCMA 499, 22 CMR 289

No. 8497

Decided January 11, 1957

*Commander Earl C. Collins* argued the cause for Appellant, Accused.

*Commander Guilbert W. Martin* argued the cause for Appellee, United States. With him on the brief was *Commander Gay E. Milius, Jr.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This is an appeal from a conviction for indecent acts, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The question before us is the legal sufficiency of the law officer's instructions.

D. T. Erdman, an eighteen-year-old apprentice seaman, occupied a lower bunk in the S–3 Division of the U.S.S. HANCOCK. The accused had the adjoining bunk in the next tier. The two beds were separated by a distance of about 3½ inches. In the early morning hours of Monday, June 6, 1955, Erdman was awakened by certain indecent movements in regard to his person. When he became aware of the significance of the accused's acts, he "was pretty scared." In the illumination provided by the night light, he saw that the accused had his head off his pillow "a little ways," and he "could kind of make out his [the accused's] eyes was open." The accused then reached for Erdman's hand and started to pull him toward his bunk. Erdman pulled away and moved to the far side of his own bed. Nothing was said by either Erdman or the accused. Erdman remained awake. After reveille he purportedly related the incident to several persons, including seamen H. T. Smith and B. L. Teal.

Smith and Teal testified by deposition. The latter testified that Erdman told him about the incident, but he did not remember the time. However, Smith gave a negative reply to a question asking whether he had seen Erdman aboard the U.S.S. HANCOCK about 6:00 a.m. or 6:30 a.m. on June 6, 1955.

Additionally, he did not answer any of the other interrogatories which specifically referred to the incident.

The accused developed his defense from two lines of approach. First, his individual defense counsel sharply attacked Erdman's testimony regarding his activities before he went to bed. The attack centered on Erdman's testimony that he had had only one drink before he returned to the ship. Second, the accused testified that he went to sleep between 10:00 o'clock and 11:00 o'clock on Sunday night and awoke at 7:15 o'clock Monday morning. He maintained that he had "no recollection" of the incident recounted by Erdman. As far as he knew, "it didn't happen." Defense counsel combined both lines of approach in his closing argument as follows:

"A case like this is, of course, in part, the word of one person against the word of another, so you have to look at the people. Who is Erdman? He is a seaman apprentice who came in out of uniform who has been convicted of public drunkenness dated shortly during the time of the incident. . . . He can be very specific on things that supposedly happened early in the morning on the 6th, but he is extremely foggy on the little bit he remembers that happened on the evening of the 5th. We have got certain facts to go on. He was ashore for 9 or 10 hours, went to a movie, did a little walking around, and then got involved with a jug and four or five friends on the street. I think the probabilities are that the street group did not break up until the jug was empty and I think that the probability is that the two or three or four unexplained hours on the beach Erdman was pretty darn drunk. And, of course, he is bound to be foggy. He does not remember what did happen and if anything happened the next morning, which is unlikely, he does not recall that.

. . . . . . .

"The only possible explanation for this whole thing, if there is any truth at all in what Erdman says, which we doubt, is that he made up some kind of cock and bull story that got as far as a leading petty officer or officer, completely uncorroborated even by his own buddies other than anything, if it happened, but merely sky-larking and the whole situation just plain got out of control. . . . This isn't any question where you have to wonder about what the accused would have testified to, why didn't he take the stand, is he hiding something? He got up there and took the stand. He was perfectly frank. Trial counsel asked him approximately three times if he persisted in his denial and on his own, he said he did. His conduct record is in evidence.

"The defense submits that as a matter of fact this case is not a question of whether there is a reasonable doubt as to whether or not the accused did it, but there is practically nothing to show that he did and a great deal to show that nothing ever happened."

On this appeal the accused maintains that he was prejudiced by the law officer's failure to instruct the court-martial on the legal effect of an unconscious or somnambulistic act. Both my brothers are of the opinion that the accused's testimony is sufficient to raise the issue. In their view, the instructions as a whole meet the minimum requirements to frame the question. They believe that the court-martial could not have found that the act charged was wrongful and lewd or lascivious, as those words were defined by the law officer, unless it also found that the accused was awake at the time he performed the acts charged. They note that defense counsel submitted three requests for instructions, each of which was given by the law officer. He interposed no other objections to the instructions and was apparently satisfied with those that were given. In this setting, my brothers conclude the accused should have requested further instructions, or, at least, objected to the instructions given. Since he did neither, his claim of error comes too late.

For myself, I believe that the evidence does not provide a reasonable basis for concluding that the accused was unconscious of the commission of

the alleged act. As the California District Court of Appeals, First District, noted "it is certain that a defendant's mere statement of forgetfulness, unsupported by any other evidence, is at most very little evidence of unconsciousness at the time of performing a particular act." People v Coston, 82 Cal App2d 23, 185 P2d 632, 641.[1] It is even less effective as a basis for framing an issue, when, as here, the accused at the trial ascribed to it a materially different meaning. Under these circumstances, the law officer was not bound to instruct, of his own accord, on the legal effect of an unconscious act.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

Judge FERGUSON concurs in the result.

---

[1] This situation is similar to that present in a claim of amnesia. In United States v Olvera, 4 USCMA 134, 15 CMR 134, we pointed out that evidence of the accused's loss of memory is not, by itself, sufficient to raise an issue as to his mental responsibility.