### UNITED STATES, Appellee

v

### JAMES L. TAYLOR, Private First Class, U. S. Army, Appellant

### 16 USCMA 489, 37 CMR 109

No. 19,587

February 3, 1967

*Captain John C. Holzer* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Frank J. Martin, Jr.*

*Captain Louren R. Wood* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Convicted by an Army general court-martial, convened at Wurzburg, Germany, of unpremeditated murder and breach of a lawful general order, in violation of Uniform Code of Military Justice, Articles 118 and 92, 10 USC §§ 918, 892, respectively, the

accused stands before us sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for fifteen years, and reduction. We granted his petition for review upon the contention:

THE LAW OFFICER ERRED IN FAILING TO INSTRUCT ON THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER.

In addition, the accused has petitioned the Judge Advocate General, United States Army, for a new trial, which petition has, under the provisions of Code, supra, Article 73, 10 USC § 873, been referred to this Court. As the petition merely reiterates matters either raised or known at the time of trial, it sets forth no grounds for relief. Code, supra, Article 73; United States v Chadd, 13 USCMA 438, 32 CMR 438. It is, accordingly, denied.

Turning to the granted issue, we find the Government contends there was no proof presented to the court-martial which placed involuntary manslaughter in issue. Thus, it relies on evidence which tends to establish accused, out on a drunken spree, chose to involve himself in a "rumble" between other soldiers of his unit. According to the prosecution witnesses, he ran up behind his victim, seized him about the neck, uttered a profane threat, and stabbed him in the chest with a switchblade knife.

On the other hand, the accused points to his own testimony as placing the matter in issue, as well as other evidence in the case. Thus, he relies on proof that the victim had roomed with him for some time and the friendly relationship between them; that, immediately prior to joining in the conflict, he had announced to a companion he was going to break up the fight; and, finally, that he expressly denied any intent to kill or inflict grievous bodily harm upon his victim. In this connection, we set out his testimony:

"A I saw a group of fellows fighting. I remember going up to the crowd. I remember pulling Johannes back from the crowd and from then on I don't remember whether I was hit or what happened, sir. The next thing I remember I woke up and they was shaking me, saying, 'You killed Johannes, you killed Johannes.'

"Q Now, when you went up to the crowd, what did you intend to do? Were you going to join the fight?

"A My intent was to break up the fight.

"Q When you went up there to break up the fight, did you intend to pull out some knife and cut somebody with it?

"A No, sir. I didn't remember getting back the knife from Pfc Skipper that night after I let him keep the knife.

"Q In other words, you had no intent when you went up there . . . . Well, did you intend to kill anybody in the fight or to inflict any grievous bodily harm on anybody?

"A No, sir, I wasn't intending to even get in the fight. I just wanted to break the fight up, not to fight. I didn't want to harm anyone.

"Q Were you just going to pull the people apart?

"A Yes, sir, pull them apart. . . ."

The foregoing presents some evidence from which the members of the court-martial could infer accused, although engaged in an assault upon his victim, neither intended to inflict death or grievous bodily harm. Hence, he was, as appellate defense counsel contend, entitled to have the lesser included offense of involuntary manslaughter submitted to the fact finders on the theory death occurred while accused was "perpetrating or attempting to perpetrate an offense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person." Code, supra, Article 119, 10 USC § 919; United States v Moore, 16 USCMA 375, 377, 36 CMR 531.

Thus, the situation here presented is not unlike that in United States v Johnson, 3 USCMA 209, 11 CMR 209, wherein the accused, while admitting he had taken out his pistol, pointed it at his victim, and pulled the trigger, declared that he had done so only to frighten him. Finding such testimony to be a negation of an intent to kill or inflict grievous bodily harm, the Court held it "sufficient to frame up an issue . . . that the killing occurred while the accused was perpetrating an offense directly affecting the person of the victim." And in United States v Robertson, 5 USCMA 806, 19 CMR 102, we also found involuntary manslaughter in issue when the accused admitted striking his victim, but denied doing so with intent to kill or inflict grevious bodily harm. See also United States v Moore, supra. In like manner, the accused's denial of intent here required the law officer to submit involuntary manslaughter to the court-martial as an alternative to the charge of unpremeditated murder. "Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." Morissette v United States, 342 US 246, 274, 96 L ed 288, 306, 72 S Ct 240 (1952). The failure of the law officer to instruct on the lesser included offense of involuntary manslaughter was prejudicially erroneous.

The findings of guilty of Charge I and its specification are set aside, and the decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The board may affirm findings of guilty of involuntary manslaughter and reassess the sentence accordingly, or order a rehearing on the murder charge and the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

As the majority concede, the evidence in the Government's case is exclusively to the effect that the accused willfully and deliberately stabbed Johannes in the chest with a switchblade knife. Putting aside the theory of defense, which was temporary insanity caused by intoxication, the majority conclude that the accused's testimony contains a denial of an intent to kill or inflict grievous bodily harm on Johannes. In my opinion, the testimony is not fairly susceptible of that interpretation; it relates merely to the accused's state of mind *before* he approached Johannes' group and *before* he took the knife from his pocket. The accused was absolutely silent as to his intention at the moment he plunged the knife into Johannes' heart; he said he didn't "remember . . . what happened." This significant difference between his testimony as to his state of mind when he approached Johannes, and his account of what happened after he became a participant in the "rumble," is best illustrated by the following excerpt from the record of trial:

"I saw a group of fellows fighting. I remember going up to the crowd. I remember pulling Johannes back from the crowd and from then on I don't remember whether I was hit or what happened, sir. The next thing I remember I woke up and they was shaking me, saying, 'You killed Johannes, you killed Johannes.' "

My reading of the accused's testimony convinces me that it contains nothing to require an instruction on involuntary manslaughter as a reasonable alternative to the offense charged. I would, therefore, affirm the decision of the board of review.