UNITED STATES, Appellee

v

JOHNNY J. MARTINEZ, Private, U. S. Army, Appellant

20 USCMA 228, 43 CMR 68

*Captain John D. Lanoue* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain Bernard J. Casey,* and *Captain Frank B. Stahl, Jr.*

*Captain Merle F. Wilberding* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial at Fort Lewis, Washington, convicted the accused of killing William Graves, Junior, a fellow soldier, while attempting to rob him of his money. On this appeal, the accused contends he was prejudiced by the law officer's denial of a request to instruct on involuntary manslaughter as a lesser offense included in that charged. The contention lacks merit for the following reasons:

1. The evidence compellingly indicates the commission of the offense of which the accused stands convicted. An eyewitness, who knew the accused as a bunkmate and was standing only four to six feet away, testified that he saw Graves "pulled . . . to the ground" by the accused. The accused "bent over" Graves and held "a knife to his neck." He told Graves to give him his money. When Graves replied that he did not have any, the accused said "something like": "'What do you want to be? A live brother or a dead brother'"? Graves tried "to get up" and the accused "came down with a punching movement" with the knife. Shortly thereafter, Graves was taken to the hospital where he was examined by a doctor and determined to be dead. An examination revealed three "penetrating" wounds, one of which entered the left ventricle of the heart causing hemorrhage resulting in death. The accused testified that he could not remember anything that happened to him from the time he drank "three straight double tequilas" followed by "three or four margueritas" and beer at the noncommissioned officers' club until he felt "a real, deep pain" in his arm as he was approaching his unit. Other evidence indicated the accused had been drinking and was "drunk" or "very drunk." Alcoholic amnesia is not a defense to crime. United States v Olvera, 4 USCMA 134, 15 CMR 134 (1954). Nor does voluntary intoxication "standing alone . . . reduce an act of unpremeditated murder to manslaughter." United States v Thomas, 17 USCMA 103, 107, 37 CMR 367 (1967); United States v Ferguson, 17 USCMA 441, 38 CMR 239 (1968).

2. The accused argues that an instruction on involuntary manslaughter was appropriate because the court members could reasonably have found that the victim was "inadvertently struck" by the accused through "culpable negligence." The argument is predicated upon testimony by an eyewitness that at one point the accused "lost his balance." The witness' testimony is to the effect that it "seemed" to him that the accused "lost his balance" while bent over Graves and "when he did this" Graves "tried to make his move to get up, and this is when . . . [the accused] came down . . . with a punching movement." Elsewhere in his testimony, the witness indicated that the accused drew down his hand

with the knife in a "jabbing motion." This testimony leaves little doubt that the accused's use of the knife was intentional and deliberate; the number of wounds inflicted upon the victim demonstrates beyond all reasonable doubt that the stabbing was not inadvertent. These circumstances distinguish the case from United States v Taylor, 16 USCMA 489, 37 CMR 109 (1967), which the accused urges as authority for reversal. The record, therefore, negates rather than supports the accused's contention that there is evidence from which the court members could reasonably conclude that Graves' death resulted from inadvertent conduct on the part of the accused.

3. Assuming an instruction on involuntary manslaughter as an alternative lesser offense should have been given, the omission was not prejudicial to the accused. A speculative possibility that a different verdict might have been rendered is not a sufficient basis upon which to justify reversal. Fuller v United States, 407 F2d 1199 (CA DC Cir) (1967), certiorari denied, 393 US 1120, 22 L Ed 2d 125, 89 S Ct 999 (1969). Here, the court members were fully instructed as to the elements of the principal offense and the lesser offense of unpremeditated murder. Their verdict indicates an affirmative rejection of the lesser offense. In Hansborough v United States, 308 F2d 645 (CA DC Cir) (1962), the Court of Appeals for the District of Columbia found no merit in a defense contention that an erroneous instruction on manslaughter as a lesser offense to a charge of murder in the first degree was prejudicial. The Court held that, since "a verdict of manslaughter was not returned, the instruction as to manslaughter, if error, was non-prejudicial." *Id.,* at page 646, footnote 2. In Belton v United States, 382 F2d 150, 157 (CA DC Cir) (1967), the same Court noted that, inasmuch as the jury went beyond murder in the second degree to find the accused guilty of murder in the first degree, its verdict "weakens

any sense of prejudice from failure to charge manslaughter." See also United States v Ransom, 4 USCMA 195, 15 CMR 195 (1954).

The decision of the United States Army Court of Military Review is affirmed.

DARDEN, Judge (concurring):

I am satisfied by the evidence that the use of the knife was intentional and deliberate. Accordingly, I believe the military judge correctly decided that the evidence did not require instructions on involuntary manslaughter.

FERGUSON, Judge (dissenting):

I dissent.

An instruction on a lesser included offense is required where there is in the record "some evidence to which the military jury may attach credit if it so desires. United States v Jones, 13 USCMA 635, 33 CMR 167 (1963); United States v Remele, 13 USCMA 617, 33 CMR 149 (1963); United States v Kuefler, 14 USCMA 136, 33 CMR 348 (1963)." United States v Evans, 17 USCMA 238, 242, 38 CMR 36 (1967). As the Chief Judge, writing for the Court, stated in United States v Bairos, 18 USCMA 15, 17, 39 CMR 15 (1968):

"Every offense reasonably raised by the evidence must be the subject of proper instructions; and *any doubt as to the sufficiency of the evidence to require instruction should be resolved in the accused's favor.* United States v Floyd, 2 USCMA 183, 7 CMR 59 (1953). Primary responsibility for the adequacy and appropriateness of the instructions rests upon the law officer. Article 51(c), Code, supra, 10 USC § 851; United States v Ginn, 1 USCMA 453, 4 CMR 45 (1952); United States v Nickoson, 15 USCMA 340, 35 CMR 312 (1965). His instructions must include every issue as to which there is competent evidence in the record. United States v Flippen, 16 USCMA 622, 37 CMR 242 (1967)." [Emphasis supplied.]

The activities of the accused and the victim Graves, immediately prior to the incident, are unclear and the precise manner in which the victim was stabbed is more speculative than certain. Fischesser, the only eyewitness, testified that Martinez had imbibed a substantial quantity of alcohol, as had Graves, and as they walked behind Fischesser "they were more or less holding each other up. They had their arms around each other." Being good friends, the two men were talking and laughing and discussing certain aspects of cooking. Martinez staggered as he walked and at one point he slipped and almost fell to the ground but was assisted in standing upright by Graves. Concerning the incident itself, Fischesser testified:

"... To me, this is what it seemed to me, Martinez had lost his balance because of him being so drunk, and when he did this, Shorty had tried to make his move to get up, and this is when Johnny came down, Martinez came down with a punching movement with his hand.

"Q [TC] Which hand?

"A His right hand. And I thought he was just punching him in the chest. I couldn't tell. I didn't actually see anything. All I could see was his hand going down in a jabbing motion. And then Graves had pushed him back, and Martinez had fell back on his butt, on his rear end, whatever you say. And Graves had jumped up and started to run, and he slipped. He almost fell, you know, he caught himself back up, and pushed himself back up, and ran across the street. This is another thing that made me think nothing was wrong with him. Neither one of them made a scream, or nothing."

At the very minimum, the above-mentioned testimony constitutes *some* evidence that the accused intended neither to kill Graves nor to cause him great bodily harm. From this evidence a body of reasonable men could legitimately conclude that the accused did not intentionally stab his friend with whom he had been walking and talking only seconds before. In fact, the accused himself suffered a badly cut hand in the encounter. A tourniquet was applied to his arm by Fischesser and the wound was later treated at the base hospital. The accused, *who testified that he had no recollection of the events which transpired,* had no prior convictions by military courts.

We are not here concerned with the sufficiency of the evidence to support the findings made by the court-martial, but with a definite procedural error, *i. e.,* a refusal to instruct on an offense reasonably raised by the evidence. Cf. United States v Patterson, 14 USCMA 441, 34 CMR 221 (1964). The measuring rod as to whether a lesser included offense has been placed in issue is not whether there is a plenitude of proof in the transcript to sustain the verdict of the court-martial (United States v Moore, 16 USCMA 375, 36 CMR 531 (1966)) but whether there is some evidence to raise the issue. The degree of guilt, if any, is exclusively a question for the fact finders to determine under proper instructions. United States v Moore, supra; United States v Evans, 17 USCMA 238, 38 CMR 36 (1967). See also United States v Kuefler, 14 USCMA 136, 33 CMR 348 (1963), and cases cited at pages 138–139. As this Court stated in United States v Judd, 11 USCMA 164, 168, 28 CMR 388 (1960):

"... [T]he amount of evidence required to raise an issue for instruction purposes is less than the amount of evidence required to support a finding of guilty. There may be enough evidence to require an instruction, yet not enough to justify affirmance of a conviction of guilt beyond a reasonable doubt."

In a prosecution and conviction for first degree murder, the court said in Belton v United States, 382 F2d 150, 155 (CA DC Cir) (1967):

"We agree with counsel that an accused is entitled to an instruction on manslaughter if there is 'any evidence fairly tending to bear upon the issue of manslaughter,'

however weak, and that the court may not intrude on the province of the jury which may find credibility in testimony that the judge may consider completely overborne by the 'simply overwhelming' evidence of the prosecutor. Stevenson v United States, 162 US 313, 315, 323, 16 S Ct 839, 40 L Ed 980 (1896); see Kinard v United States, 68 App DC 250, 253–254, 96 F2d 522, 525–526 (1938)."

In the case at bar, the law officer instructed the court that, in the event it did not believe that the accused was attempting to rob the victim, it could, on the evidence before it, return a finding that he was guilty of the lesser offense of assault with a dangerous weapon. He declined, as noted, defense counsel's request that the court also be instructed that, in the event it found the victim's death resulted as a consequence of an assault with a deadly weapon, it could find, as a corollary, that the accused was guilty of involuntary manslaughter, under Article 119, Uniform Code of Military Justice, 10 USC § 919, a lesser included offense to the charge of murder while attempting robbery.

A distinctly similar situation was before this Court in United States v Taylor, 16 USCMA 489, 37 CMR 109 (1967), where the accused, out on a drunken spree, involved himself in a rumble between other soldiers in his unit and, in the course of the fight, seized and stabbed the victim. He was convicted of unpremeditated murder. Because the accused testified that he entered the fight only with the intent of breaking it up and expressly denied any intent to kill or inflict grievous bodily harm and, in fact, *stated he did not even remember stabbing the victim,* we reversed for failure of the law officer to instruct on the lesser offense of involuntary manslaughter. As we said in *Taylor,* at page 490:

"The foregoing [testimony of the accused] presents some evidence from which the members of the court-martial could infer accused, although engaged in an assault upon his victim, neither intended to inflict death or grievous bodily harm. Hence, he was, as appellate defense counsel contend, entitled to have the lesser included offense of involuntary manslaughter submitted to the fact finders on the theory death occurred while accused was 'perpetrating or attempting to perpetrate an offense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person.' Code, supra, Article 119, 10 USC § 919; United States v Moore, 16 USCMA 375, 377, 36 CMR 531 (1966)."

Because I believe that the lesser included offense of involuntary manslaughter was raised by the evidence, I would hold the law officer's refusal to instruct thereon as prejudicial error. I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.