UNITED STATES

v.

Michael J. SEXTON, 313 54 6514 Sergeant (E–5) U. S. Marine Corps.

NCM 75 0667.

U. S. Navy Court of Military Review.

20 Oct. 1975.

LT Alan E. Sherman, JAGC, USNR, Appellate Defense Counsel.

LT Mark D. Wigder, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., MURRAY and GLASGOW, JJ.

## DECISION

CEDARBURG, Chief Judge:

This appellant was convicted by general court-martial of wrongful possession of a pistol in violation of Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892, two counts of assault with a dangerous weapon in violation of Article 128 of the UCMJ, 10 U.S.C. § 928 and wrongful discharge of a firearm endangering human life in violation of Article 134 of the UCMJ, 10 U.S.C. § 934. He was sentenced by the court to confinement at hard labor for one year, total forfeitures during this period, reduction in rank to E–1 and discharge from the naval service with a bad conduct discharge. This sentence was approved by the convening authority.

Appellant assigns two alleged errors:

"I. THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT'S SUBSTANTIAL RIGHTS BY FAILING TO INSTRUCT THE COURT MEMBERS ON THE ISSUE OF APPELLANT'S MENTAL RESPONSIBILITY AT THE TIME OF THE OFFENSES.

"II. THE STAFF JUDGE ADVOCATE'S REVIEW IS PREJUDICIALLY INADEQUATE AS TO THE ISSUE OF THE MILITARY JUDGE'S FAILURE TO INSTRUCT THE COURT ON APPELLANT's MENTAL RESPONSIBILITY AT THE TIME OF THE OFFENSES."

We affirm.

The prosecution showed that appellant returned to his barracks on the evening of 31 August 1974. He required the assistance of the duty firewatch, Lance Corporal M., in inserting his key into the door lock and opening a combination lock to his wall locker. At that time "his speech was an indication of like it was a lot of liquor involved." Appellant told Lance Corporal M. that he was mad at the military and was going to get himself into trouble that evening. Shortly thereafter he came downstairs and directed the Assistant Duty NCO of the barracks and Lance Corporal M. to call the security police to the barracks. He was carrying a pistol and ammunition and announced that he was going to shoot or kill somebody. When the security police arrived they were taken under fire, a bullet striking the dashboard of one of the police vehicles. Approximately 20 to 30 shots were fired in several volleys. Appellant, who was outside the barracks, fired from a crouching position near a street light. He was not under cover. Many of his shots were apparently fired wildly into the air at a 45 degree or 90 degree angle. The security police did not return his fire and were eventually able to subdue and disarm him. At this point appellant was heard to exclaim, "I wish I was dead." He later told a security policeman, "something about being depressed because the war in 'Nam was over and he couldn't go over there and roam through the villages and shoot people.' "

Appellant testified that he had attempted to commit suicide in 1973 after he had been dropped from a school for embassy guards because of immaturity. His attempt consisted of swallowing an overdose of sleeping pills in his barracks' head. During the afternoon and early evening of 31 August 1974, he had been drinking at the NCO club. He did not recall leaving the club after approximately seven hours of drinking. Appellant had only partial and sporadic recollection of the incident for which he was on trial. He did not recall ever pulling the trigger of the pistol although he did remember the recoil from one shot. He did not remember saying any of the things attributed to him and did not remember his emotions during the events of the evening.

Appellant argued at trial that his actions were in reality an abortive suicide attempt. He based his assertion that he was without mental responsibility upon a psychiatrist's report and testimony that he suffered from an immature personality and habitual excessive drinking; testimony by the Director of the Air Station Alcoholic Rehabilitation Center, who was unacquainted personally with appellant, that an alcoholic commonly has blackout periods and has a higher statistical rate of suicide and suicide attempts than a non-alcoholic; and statements by government witnesses to the incident. He asserted that testimony that he went to sleep shortly after he was detained in the brig and was able to stand on one foot while dressing upon awakening a half-hour later was inconsistent with the hypothesis that he had been drunk during the shooting incident.

The Manual for Courts-Martial, 1969 (Revised edition), states at paragraph 120b that "A person is not mentally responsible in a criminal sense unless he was, at the time, so far free from mental defect, disease or derangement as to be able concerning the particular act charged both to distinguish right from wrong and to adhere to the right." An accused is initially presumed to have been sane at the time of the alleged offense, but when "some evidence which could reasonably tend to show that the accused is insane . . . or was insane at the time of his alleged offense . . . is introduced either by the prosecution or by the defense or on behalf of the court, then the sanity of the accused is an essential issue." MCM, ¶ 122a. This test should be applied in the spirit of the legislative purpose that a liberal construction be adopted in determining the existence of an issue of sanity. *United States v. Biesak*, 3 U.S.C.M.A. 714, 14 C.M.R. 132 (1953); *United States v. Jones*, 45 C.M.R. 697 (ACMR 1972).

Testimony raising the issue of insanity may be given by a psychiatric expert,

*cf., United States v. Jones, supra,* by lay witnesses, *cf., United States v. Thomas,* 48 C.M.R. 865 (ACMR 1974), or by the accused himself, *United States v. Thomas,* 20 U.S.C.M.A. 249, 43 C.M.R. 89 (1971). The Army Court of Military Review has aptly observed that "what is 'some evidence tending reasonably to raise the issue' is not subject to precise definition." *United States v. Thomas,* 48 C.M.R. at 867. While the evidence need not rise to the quantum of proof that would satisfy the fact-finders that the accused was not mentally responsible, *United States v. Walker,* 20 U.S.C.M.A. 241, 43 C.M.R. 81 (1971), there are two prongs to the test. Not only must there be "some evidence" but the evidence must tend "reasonably to show" that he was insane at the time in question.

 The psychiatrist's testimony does not satisfy either prong of the test, as he stated that appellant was able to distinguish between right and wrong and adhere to the right on the evening of the incident. His concession that additional facts could lead him to revise his diagnosis and opinion is not an equivocation of his affirmance that appellant was mentally responsible on the basis of the facts at his disposal. We therefore distinguish *United States v. Jones, supra.* In a society that sets obedience to law as the norm, deviance in the form of illegal conduct is by definition abnormal. Mere evidence of deviant, illegal conduct, however, does not permit syllogistic reasoning that the actor is abnormal, therefore insane. This faulty syllogism is clearly the basis of Lance Corporal M.'s testimony that, "Well, I don't think any normal person would be shooting at another person under normal conditions but I think it is possible that any guy taking a pistol out or a rifle and starts shooting at somebody else, he is a little bit disturbed or aggravated." The same reasoning underlie his telephoned warning to the security police that, "I have a crazy man here with a gun." This testimony, therefore, does not reasonably tend to show appellant's insanity. Nor does appellant's testimony that he could not recall many of the events tend reasonably to show his insanity. *United States v. Olvera,* 4 U.S.C.M.A. 134, 15 C.M.R. 134 (1954); *United States v. Parmes,* 44 C.M.R. 628 (ACMR 1971) ("Military jurisdiction has long held that amnesia in and of itself is a relatively neutral circumstance in its bearing on criminal responsibility.") Further, alcoholic amnesia is not a defense to crime. *United States v. Martinez,* 20 U.S.C.M.A. 228, 43 C.M.R. 68 (1970).

Our examination of the record of trial leads us to affirm the correctness of the military judge's refusal of appellant's request for a charge to the court on the issue of mental responsibility, as the record does not contain some evidence that could reasonably tend to show that he was insane at the time of the incident. As the ruling of the military judge was correct, we find no error in the review by the staff judge advocate.

The findings and the sentence as approved below are affirmed.

Judge MURRAY concurs.

Judge GLASGOW (Absent).