UNITED STATES

v.

James H. RIEGE, 398 62 1607, Seaman (E–3), U. S. Naval Reserve.

NCM 77 0805.

U. S. Navy Court of Military Review.

Sentence Adjudged 31 Dec. 1976.

Decided 22 Sept. 1978.

CAPT Joseph F. Smith, USMCR, Appellate Defense Counsel.

LT Richard A. Joyce, JAGC, USNR, Appellate Government Counsel.

Before DUNBAR, GREGORY and GRANGER, JJ.

GRANGER, Judge:

On 27 September 1977, this Court returned this case to the Judge Advocate General of the Navy for a new staff judge advocate's review and convening authority's action. *United States v. Riege*, No. 77 0805 (N.C.M.R. 27 September 1977). Review below has now been completed and the record is before us pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866.

In a contested general court-martial bench trial, appellant was convicted of unlawful entry and commission of an indecent act with another, both in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to confinement at hard labor for 6 months, reduction to pay grade E–1, and separation with a bad-conduct discharge.

We draw freely from appellate defense counsel's statement of the facts, with necessary modification to reflect the findings of this Court: On the morning of 17 July 1976, Mrs. C discovered appellant, a total stranger, asleep and naked beneath an afghan on her living room couch. Cradled in his arms and partly under his body was Mrs. C's four-year-old daughter, clad only in a tee-shirt over one arm. Appellant's clothing, as well as the little girl's underwear, were on the floor next to the couch. The chain of events culminating in this bizarre tableau began 24 hours earlier.

Appellant and three shipmates spent the morning of 16 July at a self-service laundry. By noon they had finished their laundry and three "six packs" of beer. On the way back to their ship, the group stopped at a bar and drank several "tubs" of beer, as well as three more "six packs". Leaving the bar about 1530, they returned to their ship, changed clothes and went ashore to attend a party at a friend's home. In route, appellant and his friends stopped at a liquor store and bought beer, a half-gallon of whiskey and a gallon of wine. They drank half the wine on the way to the party.

By the time appellant arrived at the party, about 1700 to 1800, he was drunk. Continuing to drink, he passed out by 1900, but revived himself later and began drinking again. He was belligerent and argumentative and was involved in two fights, during one of which he struck the bar twice with his head. He left the party about an hour later, around midnight.

Appellant testified he remembered nothing from the time he passed out around 1900 until he was awakened and apprehended by a law enforcement officer in Mrs. C's living room.

The evidence established circumstantially that appellant had entered the locked home sometime between 0230 and 0730 through a window after removing the window screen.

Appellant assigns the following error: THE EVIDENCE IS INSUFFICIENT TO ESTABLISH GUILT BECAUSE THE DEFENSE OF UNCONSCIOUSNESS WAS NOT DISPROVED BEYOND A REASONABLE DOUBT.

■ Appellant was charged with committing lewd and lascivious acts upon a child under the age of 16—a crime that requires the specific intent to arouse, appeal to, or gratify lust, passion or sexual desires. *See* paragraph 213*f*(3), *Manual for Courts-Martial, United States, 1969* (Revised edition). Appellant contends that the evidence raised two defenses to this crime. The first was that of voluntary intoxication to the point that the requisite specific intent to commit an indecent act could not be formed. The military judge apparently concluded that appellant *was* intoxicated to that degree, because he found appellant not guilty of that offense, but guilty of the lesser-included offense of committing an indecent act with another—an offense that requires no specific intent. *See United States v. Sanchez*, 11 U.S.C.M.A. 216, 29 C.M.R. 32 (1960); *United States v. Jackson*, 31 C.M.R. 738 (A.B.R.1962).

The second defense urged by appellant is that of "unconsciousness." He contends that one must be conscious to commit a crime, citing *United States v. Anderson*, 13 U.S.C.M.A. 258, 32 C.M.R. 258 (1962) and *United States v. Johnson*, 7 U.S.C.M.A. 499, 22 C.M.R. 289 (1957). The defense of unconsciousness therefore bars conviction of

even general-intent offenses, appellant asserts, and his conviction of unlawful entry and committing an indecent act with another must be set aside because there exists a reasonable doubt as to whether appellant was conscious at the time he committed these offenses.

■ We find no indication that military law recognizes any special defense of unconsciousness. Appellate defense counsel refers us to only two cases that discuss this defense, and appellate Government counsel indicates there are no others. Nothing stated in those cases indicates that unconsciousness merits different consideration from that given any other mental disorder. We conclude that unconsciousness is but one of the many disorders encompassed by the defense of insanity and merits no unique consideration. As one writer has stated:

> Is there room for a new legal principle, discrete from the 'insanity' defense, based on lack of consciousness and governed by a distinct legal rule? Psychiatrically, the distinction is unsound, and legally it seems to add a refinement that is unsubstantial and unhelpful. The legal rules governing insanity as a defense should be broad enough to deal adequately with the various types of disorder, but no sound reason appears for splitting off some disorders and treating them as if they were something other than mental disorders. [*H. Weihofen, Mental Disorder as a Criminal Defense* 121, 122 (1954)].

We therefore dispose of appellant's assignment of error by reviewing the record to determine whether it shows beyond a reasonable doubt that appellant is mentally responsible for the conduct that gave rise to his conviction. *See United States v. Frederick*, 3 M.J. 230 (C.M.A.1977).[1]

■ An accused is initially presumed to have been sane at the time of the alleged offense, but when ". . . some evidence which could reasonably tend to show that the accused is insane . . . or was insane at the time of his alleged offense . . . is introduced . . . then the sanity of the accused is an essential issue. . . ." *Manual for Courts-Martial, United States, 1969* (Revised edition), paragraph 122a.

The evidence upon which appellant relies to support his "unconsciousness" defense includes the following:

(1) Appellant suffered several blows to his head during an altercation earlier in the evening. There is no evidence that these blows altered the behavior of appellant or affected his subsequent conduct. Appellant was examined by a doctor the following day and apparently had no head injury requiring treatment. Although appellant maintained he could remember nothing of the offenses, it is clear that this memory loss began several hours before appellant was struck. In short, there is no evidence that head injury was a causative factor in this case. *See United States v. Olvera*, 4 U.S.C.M.A. 134, 15 C.M.R. 134 (1954).

■ (2) Appellant was obviously intoxicated. The law does not discriminate in favor of a drunk, however, and there is no principle of law that authorizes drunkenness to be invoked as an excuse for crime. *United States v. Judkins*, 14 U.S.C.M.A. 452, 34 C.M.R. 232 (1964); *United States v. Craig*, 2 U.S.C.M.A. 650, 10 C.M.R. 148 (1953). One who drunkenly assaults or rapes or commits reckless acts without awareness of his conduct or its effect ought to be subject to criminal sanction. Otherwise there is a hiatus in the law through which dangerous persons may pass. 1 *Working Papers of the National Commission on Reform of Federal Criminal Laws* 226 (1970).

---

1. At his trial, appellant did not choose to raise specifically the defense of insanity. During his presentence hearing, however, he presented evidence of a sanity board report in which medical authorities concluded that appellant "has an alcohol problem that has resulted in periodic amnestic episodes and aberrant behavior which are associated solely with simple intoxication."

In further concluding that appellant was mentally responsible for commission of these offenses, the sanity board obviously applied the standard set forth in MCM, para. 120b, and not the ALI standard. This error was not prejudicial to appellant, however. In light of the board's findings, the same conclusion would obtain under either standard.

Intoxication does not, in itself, constitute mental disease within the meaning of the American Law Institute (ALI) test for mental responsibility. Model Penal Code § 2.08, Proposed Official Draft (May 4, 1962). When the Court of Military Appeals adopted the ALI test in *United States v. Frederick, supra,* it did not explicitly adopt section 2.08 of the Model Penal Code. Other case law has effectively incorporated the same legal principle into the military law of insanity, however.

■■■ Voluntary intoxication can negate specific intent and thereby preclude conviction for specific intent offenses, *United States v. Thomson,* 3 M.J. 271 (C.M.A.1977), but voluntary intoxication will not absolve one of criminal responsibility where his crime requires no specific intent. *United States v. Santiago-Vargas,* 5 M.J. 41 (C.M.A.1978). Appellant successfully urged his voluntary intoxication defense and thereby avoided conviction of any specific-intent offense, but that defense will avail him nothing as to the lesser-included, general-intent offense of committing indecent acts with another.

■■■ (3) Appellant has no memory of the entire incident giving rise to these charges. Alcoholic amnesia is not a defense to crime. *United States v. Martinez,* 20 U.S.C.M.A. 228, 43 C.M.R. 68 (1970). As was stated in *United States v. Olvera, supra,* amnesia is a relatively neutral circumstance as it bears on criminal responsibility:

> Literally nothing has been brought to our attention which indicates that one who 'blacks out' when drunk is more probably suffering from a [mental disease or defect] . . . than one who, however intoxicated, possesses a clear and distinct recollection of events [*Id.* at 139, 15 C.M.R. at 139].

■■■ (4) A person of appellant's background and character, as shown by the evidence, is unlikely to consciously commit such offenses. Aberrant behavior alone does not indicate lack of mental responsibility, however. As the Chief Judge of this Court stated in *United States v. Sexton,* 1 M.J. 679, 682 (N.C.M.R.1975):

In a society that sets obedience to law as the norm, deviance in the form of illegal conduct is by definition abnormal. Mere evidence of deviant, illegal conduct, however, does not permit syllogistic reasoning that the actor is abnormal, therefore insane.

Irrational actions prompted by intoxication do not raise the issue of mental responsibility. *United States v. Lewis,* 14 U.S.C.M.A. 79, 33 C.M.R. 291 (1963), *United States v. McMahon,* 4 M.J. 648 (A.F.C.M.R.1977).

(5) Appellant did not leave the scene of his crime. Appellate defense counsel reasons that, "if appellant truly understood the nature of what he was doing, he would certainly have appreciated the need to escape detection. Instead, he took off his clothes and went to sleep. He must not have appreciated what was going on." We find from the evidence, however, that appellant simply "passed out" from over-indulgence of alcohol after he committed these offenses. The fact that nature chose this singularly compromising time and location to signal that "the party" was over does not tend to negate the presumption that appellant was mentally responsible for his earlier conduct.

■■■ A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *United States v. Frederick, supra.* We find no evidence that, at the time appellant committed the offenses of which he was convicted, he was suffering from such disease or defect, as those terms are defined in the military law discussed above. Any lack of awareness experienced by appellant was attributable to his voluntary intoxication and therefore did not raise an insanity defense.

In another assignment of error, appellant contends that the findings and sentence must be set aside because of infirmities in the staff judge advocate's pretrial advice. The facts pertinent to this issue were set forth in our earlier opinion:

Appellant was originally charged with housebreaking in violation of Article 130, UCMJ [10 U.S.C. § 930]. When the staff judge advocate reviewed the Article 32 [10 U.S.C. § 832] investigation, he concluded that there was no evidence that the accused entered the residence with the requisite specific intent to commit a criminal offense and, in his original pretrial advice, he recommended that this charge be amended to allege the lesser included offense of unlawful entry in violation of Article 134, UCMJ. He did not specifically discuss the elements of this lesser included offense. The convening authority in his referral directed that the charge sheet be amended to charge unlawful entry. Trial defense counsel challenged the sufficiency of the pretrial advice, pointing out several significant discrepancies, but he did not complain about the advice regarding unlawful entry. The military judge properly ordered the preparation of a new pretrial advice. At the time the new advice was prepared, the charge sheet had already been amended to reflect an unlawful entry instead of housebreaking. The new pretrial advice nevertheless addressed itself to the offense of housebreaking and the permissible punishment for that offense and, without setting forth the elements of the lesser included offense of unlawful entry, again concluded that the evidence would not sustain conviction for housebreaking and recommended amending the charge to allege unlawful entry, despite the fact that this action had already been accomplished. At a second Article 39(a) [10 U.S.C. § 839(a)] hearing, appellant objected to the new pretrial advice because it was incomplete, in that it failed to discuss the elements of the offense of unlawful entry and did not advise the convening authority of the maximum punishment which could be adjudged for this offense. . . . [*United States v. Riege*, No. 77 0805 (NCMR 27 September 1977) (slip opinion, p. 2)].

The advice of the staff judge advocate must include a statement of his findings with respect to whether the allegation of each offense is warranted by evidence indicated in the report of investigation. Paragraph 35c, *Manual for Courts-Martial, United States, 1969* (Revised edition). To the extent that his advice is incomplete, ill-considered, or misleading as to any material matter, he has failed to comply with the statutory obligation imposed by Article 34, Uniform Code of Military Justice, 10 U.S.C. § 834. *United States v. Greenwalt*, 6 U.S.C. M.A. 569, 20 C.M.R. 285 (1955). While there are no rigid rules as to what matter must be included in the staff judge advocate's advice, it should include a discussion of all factors which would have a substantial influence on the decision of the convening authority. *See United States v. Foti*, 12 U.S.C.M.A. 303, 30 C.M.R. 303 (1961).

In the present case, the staff judge advocate omitted a discussion of the offense charged and discussed a more serious offense. Under different circumstances this could be misleading and could have a substantial influence upon the convening authority. *See United States v. Miller*, 22 C.M.R. 351 (A.B.R.1956). We find that appellant was not prejudiced in this case, however.

Discussion of the more serious offense could not have influenced the convening authority to appellant's detriment. The convening authority was aware that the original charge preferred against appellant was housebreaking. He had personally made the determination to amend that charge to allege the lesser included offense of unlawful entry.

Further, we conclude there is no merit to the contention of trial defense counsel that the pretrial advice failed to include discussion of the specific elements of the unlawful entry offense. The staff judge advocate listed the elements of housebreaking, thoroughly appraised the pertinent evidence and concluded that, because there was no evidence of specific intent, a charge of housebreaking could not be sustained, but that the evidence did support a charge of unlawful entry, which was a lesser-included offense of housebreaking.

It required no difficult mental exercise to deduce that the remaining elements of housebreaking were also elements of unlawful entry and that the evidence proved those elements. The evidence tending to prove the unlawful entry was carefully set forth. The only element of unlawful entry not discussed in the pretrial advice was that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. It is inconceivable that the convening authority would conclude otherwise where, as here, a seaman impermissibly entered the Government quarters of a chief boatswain's mate. This is the antithesis of good order and discipline.

Nor was the advice regarding maximum sentence inadequate. The staff judge advocate advised that the maximum confinement that could be adjudged for the offenses of housebreaking, indecent acts upon a female under 16, and drunk and disorderly conduct was 5 years, 7 years, and 3 months, respectively; but that the maximum sentence permissible for the charges referred to trial was 7 years, 9 months. While this may be a circuitous way to advise the convening authority that the maximum confinement for unlawful entry is 6 months, it is no less accurate and no less informative.

As was stated in *United States v. Houghton*:

All the accused may claim is that the commander who exercises his discretion as to whether to send a case to trial should be sufficiently advised of the operative facts to make a fully informed judgment. The choice of format and language are at the staff judge advocate's discretion. . . . [31 C.M.R. 579, 587 (A.B.R.1961), *aff'd*, 13 U.S.C.M.A. 3, 32 C.M.R. 3 (1962)].

In this case, the pretrial advice clearly meets that test. The convening authority was adequately advised of all the facts that might have had a substantial influence upon his decision. We conclude that the military judge correctly overruled appellant's objection to the pretrial advice, because that advice was adequate.

The findings and sentence are affirmed.

Senior Judge DUNBAR and Judge GREGORY concur.